UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PAULA M. LELIGDON, | ) | CASE NO.: 1:14CV2810 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD NUGENT |
| v. | ) | |
| | ) | |
| ROBERT McDONALD, | ) | MEMORANDUM IN SUPPORT OF |
| | ) | DEFENDANT'S PARTIAL MOTION |
| Defendant. | ) | TO DISMISS |

INTRODUCTION

On December 23, 2014, Plaintiff Paula M. Leligdon ("Leligdon"), an employee of the United States Department of Veteran's Affairs in Cleveland, Ohio ("VA"), filed a complaint against Robert A. McDonald, Secretary of the VA, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. §§ 633a, et seq., ("ADEA"), and the Whistleblower Protection Act, 5 U.S.C. § 2302 ("WPA"). Leligdon, however, failed to exhaust her administrative remedies with respect to all of her claims except those contained in Agency Case No. 200H-VI10-2013-103868. Therefore, all of Leligdon's claims under the ADEA, and her unexhausted claims under Title VII, must be dismissed.[1]  Fed. R. Civ. P. 12(b)(6).  Further, this Court lacks subject matter jurisdiction over Leligdon's WPA claim, which also must be dismissed.  Fed. R. Civ. P. 12(b)(1).

---

[1] When ruling on a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), a court may consider documents other than the pleadings that are referred to in the complaint and are integral to the claims therein without converting the motion to dismiss into one for summary judgment. Bassett v. NCAA, 528 F.3d 426, 430 (6th Cir. 2008); Weiner v. Klais & Co., Inc., 108 F.3d 86, 89 (6th Cir. 1997).  Leligdon cites to all three EEO complaints in her Complaint.  (Compl. ECF No. 1, PageID # 3, 6-7, 15-16, ¶¶ 4, 21, 27, 57-58.)  Therefore, those documents may be considered by the Court in deciding the instant motion to dismiss.  However, if the Court determines that the attached documents do not meet that standard, Defendant respectfully moves this Court, in the alternative, for summary judgment in its favor pursuant to Fed. R. Civ. P. 56.

BACKGROUND

Leligdon is employed as a Supervisor of Psychiatry Social Work at the Wade Park facility of the Veteran's Administration Medical Center ("VAMC") in Cleveland, Ohio. On December 23, 2014, Leligdon filed the instant complaint, asserting two causes of action. In Count I, labeled "Discrimination," Leligdon asserts that the VA violated Title VII by retaliating against her for prior Equal Employment Opportunity ("EEO") activity, (Compl. ECF No. 1, PageID # 34-35, ¶¶ 115-116, 118), violated Title VII and the ADEA by engaging in unlawful age and gender discrimination when it selected Felix Christopher Esmurdoc as the Assistant Chief of Social Work instead of Leligdon, (id., PageID # 35, ¶ 117), and violated Title VII by engaging in retaliation and gender discrimination when it allegedly placed Leligdon under surveillance, (id., PageID # 35, ¶ 119). In Count II of her Complaint, Leligdon asserts that the VA violated the WPA by taking personnel actions because of her "disclosures, participation and other protected activities." (ECF No. 1, PageID # 35, ¶¶ 122-123). Between 2011 and 2014, Leligdon initiated three EEO complaints. Those complaints, and their dispositions, are detailed as follows:

A. Agency Case No. 200H-0541-2011-102788

On June 23, 2011, Leligdon filed a formal complaint of discrimination with the VA. (Declaration of James Jindra ("Jindra Decl."), ¶ 2(a).) The sole claim accepted for investigation was an allegation that Leligdon was discriminated against due to her age when she was not selected for the position of Caregiver Support Coordinator on March 31, 2011. (Id. , ¶ 2(a), Ex. 1.) Leligdon withdrew her complaint, and the Administrative Law Judge dismissed her case on March 28, 2013. (Id., ¶ 2(a), Ex. 2.)

B.  Agency Case No. 200h-0541-2012-03512.

On July 23, 2012, Leligdon filed a second formal complaint with the VA, alleging discrimination based on age and reprisal for EEO activity. (Jindra Decl.,¶ 2(b).) The accepted claims were whether Leligdon was subjected to a hostile work environment based on her age or as reprisal for her prior EEO activity, when:

1. On May 8 and 9, 2012, the Psychiatry Administrative Officer and an Agency physician excluded her from a meeting of the Mental Health 7-Day Monitor Committee;

2. On June 12, 2012, the Chief of Social Work, Joseph Aquilina, did not select Leligdon for the Supervisory Social Worker (Assistant Chief) position, GS-0185-13, as announced under vacancy number FZ-656325-LR.

3. On June 20, 2012, the Assistant Chief of Psychiatry, Dr. David Blank removed Leligdon from the Psychiatry Grand Rounds Committee without an explanation.

4. On August 8, 2012, the Medical Manager of Inpatient Psychiatry, Linda Bond, denied Leligdon's request to become a member of the Mental Health Psychiatry Workshop.

(Id.., ¶ 2(b), Ex. 3) Claims 2, 3, and 4 also were accepted as independently actionable claims of age discrimination and reprisal. (Id.) On January 28, 2014, the VA issued a FAD dismissing the complaint. (Id. ) Leligdon did not file an appeal with the OFO or a federal civil action with respect to the FAD. (Id.)

C.  Agency Case No. 200H-VI10-2013-103868.

On August 30, 2013, Leligdon filed a third formal complaint of discrimination. (Jindra Decl., ¶ 2(c).) The following claims were accepted for investigation into whether Leligdon was subjected to a hostile work environment based on reprisal for prior EEO activity:

1. In August 2012, Esmurdoc acknowledged that he was aware of the rumors and gossip going around the Medical Center about Leligdon and he failed to act when Leligdon advised him that she was being harassed by her subordinates.

2. In November 2012, Jason Gatliff, Head of Ethics Committee, stated that he had difficulty working with Leligdon due to the rumors, gossip, and negative talk about her that was

3

going around the medical center, admitted he participated in said gossip and rumors, and that he was aware of her EEO complaint.

3. In June 2012 and November 2012, management failed to act when Leligdon advised them of bullying, rumors and gossip being spread about her through the VAMC.

4. On March 15, 2013, Susan Fuehrer, Director, failed to act after Leligdon advised her about Jason Gatliff's admission that he had difficulty working with her and his participation in spreading rumors, gossip and negative talk about her.

5. In May 2013, just prior to the May 20th meeting, Aquilina and Esmurdoc initiated a "witch-hunt" on Leligdon by soliciting reports of contact (ROCs) from her subordinates, and contacting HR and EEO regarding an inquiry/investigation against her.

6. On May 20, 2013, during a meeting, Esmurdoc threatened to discipline Leligdon for alleged insubordination.

7. On June 3, 2013, Esmurdoc and Aquilina issued Leligdon four different ROCs, dated May 14, 2013, May 20, 2013, May 21, 2013, and May 29, 2013.

8. On July 22, 2013, Esmurdoc threated to remove Leligdon from the Professional Standards Review Board if she refused to assume increased duties.

9. On July 31, 2013, Esmurdoc issued Leligdon two Counseling Plans.

10. From July 2012 to October 16, 2013, Aquilina and Esmurdoc failed to support and/or have undermined Lelgidon's supervisory position and responsibilities.

11. On October 8, 2013, Esmurdoc charged Leligdon two hours for being absent without leave (AWOL).

12. On October 16, 2013, Esmurdoc charged Leligdon with fifteen minutes of AWOL.

13. On October 23, 2013, Esmurdoc issued a third Counseling Plan to Leligdon.

14. On December 3, 2013, Esmurdoc issued Leligdon an adverse performance rating whereby he rated her "Fully Successful."

15. On January 2, 2014, Andrea Freeman, Director of EEO, provided advice and recommendations which caused Leligdon's official time to be limited to 16 hours.

16. On January 2, 2014, Freeman demeaned and disrespected Leligdon by accusing her of harassment and bullying, and refused to communicate with her about official business, including her pending EEO complaint.

17. During a period from October 2013 through January 29, 2014, Dr. Bond undermined Leligdon's supervisory duties by interfering with her investigation of a complaint from a Veteran's family member about the treatment received, influenced Leligdon's subordinate not to meet with her, and refused to act regarding Leligdon's complaint about Dr. Bond's interference.

18. On January 2, 2014, Dr. Murray Altose, Chief of Staff, issued Leligdon a memorandum, Subj: Letter of Expectations.

19. On March 26, 2013, Esmurdoc and Aquilina issued Leligdon a Counseling Plan.

20. On or about March 31, 2014, Esmurdoc and Aquilina issued Leligdon a ROC.

21. On April 1, 2014, Esmurdoc and Aquilina prohibited Leligdon from ever using the restricted option in Outlook for all email communications.

22. On April 4, 2014, Esmurdoc and Aquilina issued Lelgdon two additional ROCs.

23. On April 4 and 7, 2014, Esmurdoc denied Leligdon's request for authorized absence to attend State Licensure and Medical Center training requirements on April 9 or April 11, 2014.

24. On April 11, 2014, Dr. Altose failed to act and supported Esmurdoc's decision to deny Leligdon's request for authorized absence to attend training and has not provided any viable rationale.

25. On May 12, 2014, Esmurdoc and Aquilina issued Leligdon a notice of proposed suspension.

26. On May 23, 2014, Esmurdoc and Aquilina issued Leligdon a Letter of Reprimand.

27. On June 6, 2014, Esmurdoc and Aquilina issued Leligdon a three-day suspension.

28. On June 6, 2014, Esmurdoc and Aquilina issued Leligdon a Letter of Reprimand.

29. On June 17, 2014, Freeman violated Leligdon's confidentiality rights and privacy when she interfered with Leligdon's EEO protected activity by contacting the assigned EEO Investigator and reviewing her EEO claims.

30. On July 3, 2014, Esmurdoc and Aquilina issued Leligdon a Counseling Plan for sending Lisa Clark, Regional Counsel Staff Attorney, an email request for legal assistance regarding a matter about her subordinate employee.

31. On July 23, 2014, Esmurdoc denied Leligdon's request to endorse her as a candidate for the VISN 10 Social Work Professional Standards Review Board.

5

32. On July 31, 2014, Esmurdoc and Aquilina issued Leligdon a notice of proposed suspension.

33. On a continuous basis, beginning in 2010 through August 9, 2014, agency officials and agents have harassed Leligdon and deprived her of privacy through the surveillance of her home, elsewhere, and private communications.

Claims 11, 12, 13, 14, 15, 23, 26, 27, 28, 29, and 31 were also accepted for investigation as discrete acts of discrimination based on reprisal. (Jindra Decl., ¶ 2(c), Ex. 4.) The EEO investigation was completed on October 16, 2014, with a finding that no discrimination occurred. (Id., ¶ 2(c).) Leligdon has not filed an appeal with the EEOC or requested a FAD. (Id.)

## LAW AND ARGUMENT

1. <u>This Court Must Dismiss Leligdon's Title VII and ADEA Claims That Have Not Been Timely and Properly Exhausted.</u>

    A. <u>Title VII Exhaustion Requirements.</u>

Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, <u>et seq.</u>, is the exclusive judicial remedy for claims of discrimination in federal employment. <u>Steiner v. Henderson</u>, 354 F.3d 432, 434 (6th Cir. 2003) (citing <u>Brown v. General Servs. Admin.</u>, 425 U.S. 820, 835 (1976)). "In permitting federal employees to sue under Title VII, Congress conditioned the government's waiver of sovereign immunity upon a plaintiff's satisfaction of 'rigorous administrative exhaustion requirements and time limitations." <u>Id.</u> (citing <u>McFarland v. Hnderson</u>, 307 F.3d 402, 406 (6th Cir. 2002) (quoting <u>Brown</u>, 425 U.S. at 833)). To bring suit in federal court pursuant to Title VII, a federal employee must first exhaust her administrative remedies. <u>Mitchell v. Chapman</u>, 343 F.3d 811, 819–20 (6th Cir. 2003) (exhaustion of administrative remedies is a condition precedent to bringing suit in federal court).

First, an employee must bring the claim of discrimination to the attention of an EEO counselor within 45 days of the alleged discriminatory act. <u>See</u> 29 C.F.R. § 1614.105(a)(1). If

the matter cannot be resolved informally, the employee must file a formal complaint with the employing agency's EEO office within 15 days of receiving notice of the right to file. See 29 C.F.R. §§ 1614.105(d), 1615.106(a), (b). If, after timely filing a formal administrative complaint and proceeding through administrative proceedings, the employee receives an adverse final determination, the employee may either file suit in federal court or request a hearing before the EEOC. If the employee elects a federal suit, he must file a complaint within 90 days of receiving notice of the agency's final decision or 180 days after filing the administrative complaint, if an appeal has not been filed and the agency has not yet reached its decision. See 42 U.S.C. § 2000e-16(c); 29 C.F.R. §§ 1614.407(a), (b). If the employee chooses to appeal the final agency decision to the EEOC, the employee must file said appeal within 30 days of the agency's final decision. See 29 C.F.R. § 1614.402(a).

The claim of discrimination asserted in an EEO complaint must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). "As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." Lybarger v. Gates, No. 1:10-CV- 0373, 2012 WL 1095915, at * 7 (N.D. Ohio March 30, 2012) (citing 42 U.S.C. 2000e-5(f)(1); Alexander v. Gardner-Denver Co., 415 U.S. 36, 47 (1974)). "This rule serves the dual purpose of giving the employer information concerning the conduct about which an employee complains, as well as affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion." Id. (citing Alexander, 415 U.S. at 44). "Allowing a Title VII action to encompass claims outside the reach of the EEOC charges would deprive the charged party of notice and would frustrate the EEOC's investigatory and conciliatory role." Id.

7

Although exhaustion is required, courts may permit some claims to be raised in a judicial complaint, even if they were not explicitly raised in the employee's EEO complaint. Such claims, however, must be charges that could be "reasonably expected to grow out of the EEOC charge" of discrimination. Weigel v. Baptist Hospital of E. Tenn., 302 F.3d 367, 379 (6th Cir. 2002) (quoting Strouss v. Mich. Dep't of Corr., 250 F.3d 336, 342 (6th Cir. 2001)). In other words, the claims must be within the "expected scope of the investigation" reasonably expected to grow out of the plaintiff's EEO charge. Dixon v. Ashcroft, 392 F.3d 212, 217 (6th Cir. 2004) (quoting Weigel, 302 F.3d at 380); Davis v. Sodexho, Cumberland Coll. Cafeteria, 157 F.3d 460, 463 (6th Cir. 1998); Ang v. Proctor & Gamble Co., 932 F.2d 540, 546 (6th Cir. 1991). An uncharged claim also may be considered exhausted if the agency discovers evidence of the discrimination underlying the claim during their investigation. Davis, 157 F.3d at 463. While the Sixth Circuit interprets the scope of the EEO charge liberally when it was filed pro se, "[l]iberal construction is not necessary where the claimant is aided by counsel in preparing his charge." Ang, 932 F.2d at 546.

B.  ADEA Exhaustion Requirements

Age discrimination claims pursuant to the ADEA have different exhaustion requirements. Under the ADEA, a federal employee seeking redress for age discrimination may choose to either file an administrative EEO complaint and then file a civil action, as in a Title VII case, or may proceed immediately to federal court in the first instance. 29 U.S.C. §§ 633a(b), (c), and (d); Stevens v. U.S. Dep't of Treasury, 500 U.S. 1 (1991). If a federal employee chooses to bypass the administrative EEO proceeding, he must submit a notice of intent to sue to the EEOC within 180 days of the alleged act of discrimination and then wait at least 30 days before filing an action in federal court. 29 U.S.C. § 633a(d).

8

    C.    <u>Only The Claims Made in Leligdon's Third EEO Complaint Are Properly Before This Court.</u>

        1.    <u>The Claims Asserted in Leligdon's EEO Complaints Designated as Agency Case Nos. 200H-0541-2011-102788 and 200H-0541-2012-03512 Are Untimely.</u>

In Agency Case No. 200H-0541-2011- 102788, Leligdon claimed that she was discriminated against due to her age when she was not selected for the position of Caregiver Support Coordinator. (Jindra Decl., ¶ 2(a), Exh. 1.) Leligdon withdrew her EEO complaint, and the case was dismissed on March 28, 2013. [2] (Id., ¶ 2(a), Exh. 2.)

In Agency Case No. 200H-0541-2012-03512, Leligdon claimed that she was discriminated against based on her age and reprisal for prior EEO activity when she was excluded from three committees and was not selected for the Supervisory Social Worker (Assistant Chief) position. (Jindra Decl., ¶ 2(b), Exh. 3.) The agency issued a FAD finding no discrimination on January 28, 2014, and Leligdon did not appeal to the OFO or file a federal district court lawsuit. (Id.)

Because Leligdon elected to pursue her ADEA claims through the EEO process, her age discrimination claims also are subject to Title VII exhaustion requirements. 29 U.S.C. §§ 633a(b), (c), and (d). Thus, as discussed above, for her federal lawsuit to be timely, Leligdon was required to file it within 90 days of receiving the FAD or within 180 days after filing the administrative complaint, if an appeal has not been filed and the agency has not yet reached its decision. <u>See</u> 42 U.S.C. § 2000e-16(c); 29 C.F.R. §§ 1614.407(a), (b).

Leligdon filed her Complaint in this case on December 23, 2014. (ECF No. 1, PageID

---

[2] In addition, Leligdon may not bring suit in district court on this claim because she withdrew her EEO complaint before receiving a final agency decision. <u>See</u> <u>Schupbach v. Gates</u>, No. 11-CV-115, 2011 WL 5282681, *5 (S.D.Ohio Nov. 2, 2011) (withdrawing or abandoning an EEO claim precludes suit in district court).

# 1). Thus, Leligdon filed her Complaint more than one year after Agency Case No. 200H-0541-2011- 102788 was dismissed, and nearly 11 months after she received the FAD in Agency Case No. 200H-0541-2012-03512. Therefore, to the extent Leligdon is asserting the claims raised in those EEO cases in this litigation, they are untimely and must be dismissed. Leligdon's claim that the VA "engaged in unlawful age and gender discrimination, and reprisal when it selected Esmurdoc as the Assistant Chief of Social Work" is untimely and subject to dismissal. (ECF No. 1, PageID # 35, ¶ 117). To the extent that Leligdon is seeking to bring claims based her alleged exclusion from a meeting of the Mental Health 7-Day Monitor Committee, removal from the Psychiatry Grand Rounds Committee, or the denial of her request to become a member of the Mental Health Psychiatry Workshop, these claims also must be dismissed for failure to exhaust.

Only one of Leligdon's three EEO cases is timely: her third case, Agency Case No. 200H-VI10-2013-103868. The administrative complaint was filed in that case on August 30, 2013, more than 180 days before Leligdon filed the instant Complaint. See 42 U.S.C. § 2000e-16(c); 29 C.F.R. §§ 1614.407(a), (b). Therefore, only the claims exhausted in that EEO complaint may be considered in this lawsuit.

> 2. Leligdon May Not Assert Claims For Gender Discrimination Or Age Discrimination In This Lawsuit Because They Were Not Included In Her EEO Complaint In Agency Case No. 200H-VI10-2013-103868.

Because Leligdon's EEO complaint in Agency Case No. 200H-VI10-2013-103868 contained only allegations of a hostile work environment and reprisal based on EEO activity, she may not now seek to add claims of age or gender discrimination for the first time in Federal Court. (See ECF No. 1, PageID # 35, ¶¶ 114, 119 (alleging VA engaged in gender discrimination when it subjected Leligdon to surveillance)); EEOC v. Bailey Co., 563 F.2d 439,

446 (6th Cir.1977) (noting that complaint asserting Title VII claims is "limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination").

Despite the fact that Leligdon was represented by counsel when filing her complaint and its numerous subsequent amendments, gender discrimination was not listed as one of the accepted charges in her third EEO complaint. In addition, she did not contend that any of the allegations in her third EEO complaint were based on her age. Ang, 932 F.2d at 546 ("[l]iberal construction is not necessary where the claimant is aided by counsel in preparing his charge"). Furthermore, a charge of age or gender discrimination could not reasonably be expected to grow out of her existing charges of retaliation based on her prior EEO complaints. Dixon, 392 F.3d at 217. And no evidence of gender discrimination, age discrimination, or discrimination of any kind, was discovered during the course of the investigation. Davis, 157 F.3d at 463.

Because Leligdon failed to raise a charge of gender or age discrimination during the administrative process, the agency had no reason or opportunity to investigate such charges, and she may not bring such claims for the first time in federal court. Alexander, 415 U.S. at 47 (Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge); Dixon, 392 F.3d at 217; Jones v. Calvert Group, Ltd., 551 F.3d 297, 301 (4th Cir. 2009) (plaintiff did not exhaust age, sex and race discrimination claims when EEO only alleged retaliation claim). Therefore, this Court must dismiss Leligdon's ADEA and gender discrimination claims for failure to exhaust administrative remedies.

11

2. <u>This Court Must Dismiss Leligdon's WPA Claim Because It Lacks Subject Matter Jurisdiction.</u>

A. <u>Whistleblower Protection Act Exhaustion Requirements</u>

The Civil Service Reform Act of 1978, as amended by the Whistleblower Protection Act of 1989, establishes certain protections for federal employee whistleblowers.  <u>Spruill v. Merit Sys. Prot. Bd.</u>, 978 F.2d 679, 682 (Fed. Cir. 1992).  Title 5 U.S.C. § 2302 provides:

> Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority . . . take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee or applicant for employment because of . . . any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences . . . gross mismanagement, a gross waste of funds, [or] an abuse of authority . . . .

5 U.S.C. § 2302(b)(8).  "Section 2302(b)(8) describes certain activities which have come to be known as 'whistleblowing,' and prohibits adverse personnel actions against federal government employees in reprisal for such activities."  <u>Spruill</u>, 978 F.2d at 681.  The retaliatory personnel actions prohibited include a failure to promote, among others.  <u>See</u> 5 U.S.C. § 2302(a)(2)(A).  "[A]n employee, former employee, or applicant for employment," who believes that she was subjected to one of these prohibited personnel actions "shall seek corrective action from the [Office of] Special Counsel" ("OSC").  5 U.S.C. § 1214(a)(3).  If she is unsatisfied with the OSC's action, she may then file a complaint with the Merit Systems Protection Board ("MSPB").  <u>See</u> 5 U.S.C. § 1221(a).  Furthermore, an employee is allowed to bypass the OSC and appeal certain more serious adverse personnel actions – from a 14 day suspension up to termination – directly to the MSPB.  5 U.S.C. § 7702(a).

An employee "may obtain judicial review of the [MSPB's] order or decision."  <u>See</u> 5 U.S.C. § 1221(h)(1).  However, only the United States Court of Appeals for the Federal Circuit, and not the district court, has jurisdiction to review MSPB decisions regarding whistleblower

12

claims for retaliation in violation of 5 U.S.C. § 2302(b)(8). See 5 U.S.C. § 7703(b)(1)(A)–(B). "Under no circumstances does the WPA grant the district court jurisdiction to entertain a whistleblower cause of action brought directly before it in the first instance." Stella v. Mineta, 284 F.3d 135, 142 (D.C. Cir. 2002); see also Grisham v. United States, 103 F.3d 24, 26-27 (5th Cir. 1997) (CSRA, as amended by the WPA, is a comprehensive remedial scheme that precludes federal employees from bringing whistleblower claims directly to federal court). Thus, plaintiffs asserting claims under the WPA may not bring claims in federal court without first exhausting their administrative remedies. McAdams v. Reno, 64 F.3d 1141, 1142 (8th Cir. 1995) (quoting Tolbert v. United States, 916 F.2d 245, 248 (5th Cir. 1990)).

There is one exception to the general rule that the court of appeals, and not the district court, has jurisdiction over a WPA claim. A federal employee who alleges that a serious adverse personnel action was motivated by discrimination is alleging what is called a "mixed case." See 5 U.S.C. § 7702(a)(1)(A), (a)(1)(B); see also 29 C.F.R. § 1614.302 ("A mixed case complaint is a complaint of employment discrimination filed with a federal agency based on race, color, religion, sex, national origin, age, disability, or genetic information related to or stemming from an action that can be appealed to the [MSPB]."); Romain v. Shear, 799 F.2d 1416, 1419 (9th Cir. 1986) (describing a mixed case as containing both an allegation of "an adverse action normally appealable to the MSPB and an allegation that a basis for the action was discrimination."). The adverse actions that are appealable to the MSPB are specified by statute, and include terminations, reductions in pay or grade, suspensions of 14 days or more, or certain furloughs. 5 U.S.C. § 7512(1)-(5); 5 C.F.R. § 1201.3. "In the absence of one of the enumerated adverse actions [in 5 U.S.C. § 7512], the case is not a 'mixed case,' and the district court does not have jurisdiction." Jarvis v. Griffin, No. 6:08CV138-Orl-19KRS, 2009 WL 3064788, *11 (M.D.Fla.

13

Sept. 21, 2009). As the Fifth Circuit stated, "[a] mixed case may contain only an allegation of employment discrimination or it may contain additional nondiscrimination claims that are within the jurisdiction of the Board, but regardless. . . it must be based on an adverse agency action that is appealable to the Board." Gomez v. Dep't of the Air Force, 869 F.2d 852-855-56 (5th Cir. 1989). A federal employee asserting a "mixed case" claim may choose to file an administrative EEO complaint, and comply with applicable exhaustion requirements.

  B. This Court Lacks Subject Matter Jurisdiction Over Leligdon's WPA Claim.

This Court lacks subject matter jurisdiction over Leligdon's WPA claim. Leligdon was required to exhaust the available administrative remedies, by filing a claim with the Office of Special Counsel and appealing to the MSPB. Leligdon apparently has failed to exhaust these remedies. (Declaration of Lisa Clark ("Clark Decl."), ¶¶ 2-3.) Even if she had exhausted her administrative remedies, however, this Court would lack subject matter jurisdiction because the Federal Circuit has exclusive jurisdiction over appeals from MSPB decisions on WPA claims. 5 U.S.C. § 7703(b)(1). Therefore, this Court lacks subject matter jurisdiction over Leligdon's WPA claim and must dismiss it.

The "mixed case" exception does not provide this Court with jurisdiction over Leligdon's WPA claim. An employee only can bring a "mixed case" claim or appeal for specified more serious adverse personnel actions (from a 14-day suspension up to termination) that an employee is allowed to appeal directly to the MSPB. See 5 U.S.C. § 7512; see also Gang v. United States Dep't of Energy, Civil No. 3:14CV1099, 2014 WL 7237699, *7 (D.Or. Dec. 17, 2014) (plaintiff's failure to promote claim not "one of the more serious adverse personnel actions falling under the mixed case exception," so "this court does not have subject matter jurisdiction over her WPA claim."); Greenhouse v. Geren, 574 F. Supp.2d 57, 67 (D.D.C. 2008) ("[E]ven

14

though Plaintiff has discrimination claims and WPA claims, she does not have an action appealable to the MSPB on which the Court can base its jurisdiction. The action affecting Plaintiff . . . cannot be appealed to the MSPB and therefore there is no 'mixed case.'"). Cf. Walia v. Napolitano, 986 F.Supp.2d 169, 181 (E.D.N.Y. 2013) (no mixed case appeal if plaintiff does not allege adverse action that is appealable to the MSPB); Abou-Hussein v. Mabus, 953 F.Supp.2d 251, 260 (D.D.C. 2013) (same).

The adverse actions that Leligdon alleges here as the basis for her whistleblower claim – a three-day suspension, various letters of reprimand, removal from committees, and alleged surveillance – do not fall within the category of actions directly appealable to the MSPB. Thus, Plaintiff's whistleblower claim must proceed through the standard administrative process of the OSC and the MSPB, with appeal rights to the Federal Circuit.

Because this Court lacks subject matter jurisdiction over Leligdon's WPA claim, this Court must dismiss Count II of Leligdon's Complaint.

## CONCLUSION

For all of the foregoing reasons, this Court should dismiss Leligdon's age discrimination, gender discrimination, and WPA claims. Moreover, this Court should dismiss Leligdon's claims that were included in Agency Case Nos. 200H-0541-2011-102788 and 200H-0541-2012-03512, because she has failed to exhaust her administrative remedies with regard to those claims and her complaint regarding them was untimely filed in this Court.

                                      Respectfully submitted,

                                      STEVEN M. DETTELBACH
                                      United States Attorney
                                      Northern District of Ohio

By:     <u>/s/ Lisa Hammond Johnson</u>
            Lisa Hammond Johnson (#0061681)
            Erin E. Brizius (#0091364)
            Assistant United States Attorneys
            United States Court House
            801 West Superior Ave., Suite 400
            Cleveland, Ohio 44113
            216-622-3679 – Hammond Johnson
            216-622-3670 - Brizius
            216-522-4982 - Fax
            Lisa.Hammond.Johnson@usdoj.gov
            erin.e.brizius2@usdoj.gov

<u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)</u>

     Pursuant to 28 U.S.C. § 1746, the undersigned declares under penalty of perjury that this Memorandum in Support of Defendant's Partial Motion to Dismiss is fifteen (15) pages in length. It complies with the page limitations for an unassigned matter.

                                      <u>s/Lisa Hammond Johnson</u>
                                        LISA HAMMOND JOHNSON
                                        Assistant United States Attorney