**DEPARTMENT OF VETERANS AFFAIRS**
**OFFICE OF EMPLOYMENT DISCRIMINATION COMPLAINT ADJUDICATION**
**WASHINGTON, D.C. 20420**

## CERTIFICATION OF SERVICE

Complainant's Name:      Paula Leligdon
Agency Case No.:      200H-0541-2012103512
EEOC No.:      532-2013-00057X

     I hereby certify that OEDCA's Final Agency Decision or Final Order in the above-referenced case was mailed to the individual(s) and organizations noted below. Service on the complainant and, if applicable, the complainant's representative was made by certified mail, return receipt requested.

Complainant:

Paula Leligdon
190 Walnut Drive
Medina, OH 44256

Complainant's Representative

Avery Friedman
701 The City Club Building
850 Euclid Avenue
Cleveland, OH 44114

Facility Director or Staff Office Head:

Director (00)
Louis Stokes Department of Veterans Affairs
Medical Center
10701 East Blvd
Cleveland, OH 44106

ORM Field Office:

Department of Veterans Affairs
Office of Resolution Management (08E)
151 Knollcroft Road, Bldg. 16
Lyons, NJ 07939



U.S. Postal Service™
CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)
For delivery information visit our website at www.usps.com®
OFFICIAL USE
Postage $
Certified Fee
Return Receipt Fee (Endorsement Required)
Restricted Delivery Fee (Endorsement Required)
Total Postage & Fees $
Postmark Here
Sent To: P. Leligdon
Street, Apt. No.; or PO Box No.
City, State, ZIP+4
PS Form 3800, August 2006    See Reverse for Instructions
7011 1570 0001 3466 0091

U.S. Postal Service™
CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)
For delivery information visit our website at www.usps.com®
OFFICIAL USE
Postage $
Certified Fee
Return Receipt Fee (Endorsement Required)
Restricted Delivery Fee (Endorsement Required)
Total Postage & Fees $
Postmark Here
Sent To: A. Friedman
Street, Apt. No.; or PO Box No.
City, State, ZIP+4
PS Form 3800, August 2006    See Reverse for Instructions
7011 1570 0001 3466 0107

**GOVERNMENT EXHIBIT**
**3**

Other:

n/a

JAN 2 8 2014

_____          _____
        *(Signature of Dispatcher)*                    *(Date of Dispatch)*

**DEPARTMENT OF VETERANS AFFAIRS**
**OFFICE OF EMPLOYMENT DISCRIMINATION COMPLAINT ADJUDICATION**
**WASHINGTON, D.C. 20420**

JAN 2 8 2014

**TRANSMITTAL OF FINAL AGENCY DECISION OR ORDER**

TO:        The Parties
           ORM Field Office

SUBJ:      Final Agency Decision or Order

           Complainant's Name:        Paula Leligdon
           Agency Case No.:           200H-0541-2012103512
           EEOC No.:                  532-2013-00057X

Enclosed is the Department's Final Agency Decision or Final Order concerning the above-referenced complaint(s) of employment discrimination.

The Final Decision/Order includes a statement explaining the complainant's right of appeal and right to file a civil action.

The transmittal to the complainant and, if applicable, the complainant's representative, includes EEOC Form 573 (MSPB Form 185, if the subject complaint is a "mixed case") for use should the complainant wish to appeal the enclosed Final Decision/Order.

If the complainant requested a hearing before an EEOC administrative judge, the transmittal to the ORM field office also encloses the hearing record, including the EEOC administrative judge's decision, and/or other miscellaneous correspondence/documents provided to this office by the judge.

Maxanne R. Witkin
Director

Enclosure(s)

DEPARTMENT OF VETERANS AFFAIRS
OFFICE OF EMPLOYMENT DISCRIMINATION COMPLAINT ADJUDICATION
WASHINGTON, D.C. 20420

| | |
|---|---|
| Paula Leligdon ) | |
| ) | |
| *Complainant,* ) | |
| ) | |
| *v.* ) | VA Case No.  200H-0541-2012103512 |
| ) | |
| Secretary, ) | |
| Department of Veterans Affairs ) | EEOC No.  532-2013-00057X |
| ) | |
| *Agency.* ) | |

## FINAL AGENCY DECISION

### INTRODUCTION

In a formal EEO complaint filed on July 23, 2012, and amended on September 10, 2012, Complainant alleged that officials at the VA Medical Center in Cleveland, Ohio, discriminated against her as referenced below.  The Department's Office of Resolution Management (ORM) accepted, as disparate treatment claims, the timely raised independently actionable claims of discrimination associated with Complainant's harassment claim.  However, ORM dismissed the harassment claim on the grounds of failure to state a claim under 29 CFR 1614.107(a)(1) based on the determination that the incidents associated with the harassment claim, even if proven to be true, were not adequately severe or pervasive to amount to a hostile work environment.[1]  Subsequent to dismissing the harassment claim, ORM investigated the accepted claims and properly notified Complainant of its decision to dismiss the harassment claim in accordance with the Commission's regulation governing partial dismissals at 29 C.F.R. Section 1614.107(b). (ROI, Tab A6)

At the conclusion of the investigation, the Department notified Complainant in writing of the right to request either a hearing and decision by an EEOC administrative judge, with a subsequent final action by the Department, or an immediate final decision by the Department without a hearing.  Complainant initially requested a hearing before an EEOC administrative judge but subsequently withdrew the request.  Accordingly, the administrative judge remanded the complaint to the Department's Office of Employment

---

[1] By dismissing the harassment claim from Complainant's complaint, ORM dismissed 1 out of the 4 issues raised in the complaint.  The other three issues were accepted for investigation as independently actionable claims of age discrimination and reprisal. (Report of Investigation (ROI), Tab A6.)

Discrimination Complaint Adjudication (OEDCA) for an immediate final agency decision based on the investigative record.  OEDCA received the file from the judge on October 2, 2013.

## PROCEDURAL DISMISSAL

ORM dismissed the harassment claim from Complainant's complaint under 29 CFR 1614.107(a)(1) based on the determination that the issues associated with the harassment claim, even if proven to be true and based on her protected classes, were not adequately severe or pervasive to amount to a hostile work environment.  As a result of dismissing the harassment theory, ORM also dismissed 1 of the 4 issues raised, while accepting the remaining 3 issues as independent claims.  Nevertheless, the investigator assigned to this case conducted a thorough investigation and gathered adequate evidence to analyze all 4 issues raised in the complaint as well as Complainant's claim that the issues raised were based on her protected classes and created a hostile work environment.  We will consider all evidence gathered and conduct a complete analysis of Complainant's harassment claim despite ORM's dismissal. (ROI, Tabs A6; B1-B7.)

We make no determination regarding the appropriateness of ORM's dismissal of the harassment claim and the resulting dismissal of 1 of the 4 issues associated with the harassment claim.  However, in an effort to give the greatest benefit of doubt to Complainant, and because there is adequate evidence in the record to analyze the harassment claim as filed by Complainant, it is our decision to reinstate Complainant's harassment claim, including all 4 issues raised by Complainant.

The merits of the accepted claims will be analyzed below.

## CLAIMS[2]

Whether Complainant was subjected to a hostile work environment based on her age, or as reprisal for her prior EEO activity, when:

1.  On May 8 and 9, 2012, the Psychiatry Administrative Officer and an Agency physician excluded her from a meeting of the Mental Health 7-Day Monitor Committee;

2.  On June 12, 2012, the Chief of Social Work did not select her for the position of Supervisory Social Worker (Assistant Chief), GS-0185-13, vacancy announcement no. FZ-656326-LR;

3.  On June 20, 2012, the Assistant Chief of Psychiatry removed her from the Psychiatry Grand Rounds Committee without an explanation;

---

[2] Issues 2, 3, and 4, in Complainant's harassment claim were also accepted as independently actionable claims of age discrimination and reprisal.  The claims will be analyzed accordingly in this decision. See, Procedural Dismissal section, herein.

4. On August 8, 2012, the Medical Manager of Inpatient Psychiatry denied her request to become a member of the Mental Health Monitor Workshop.

## SUMMARY OF FACTS[3]

Complainant, born in 1956, testified that she worked as a "the Supervisor of Psychiatry Social Work and also a clinical social worker in Outpatient Psychiatry" at the VA Medical Center in Cleveland, Ohio, (facility) at the time relevant to this complaint. Her supervisors were Mr. DG, the Assistant Chief of Social Work Service, and Mr. JA, the Chief of Social Work Service. (ROI, Tab B1.)

In or around 2009, the facility formed a Mental Health Monitor Committee as a means of gauging and improving a performance measure concerning follow-up appointments for discharged psychiatric patients. Complainant was on the committee, which met irregularly, "as needed," and for the last time in March 2011. In February 2012, the leaders of the committee, Dr. LB, the Medical Manager for Inpatient Psychiatry, Dr. EK, the Chief of Psychiatry, and Mr. WS, the Administrative Lead of Psychiatry, were summoned by facility leadership to discuss a new plan for achieving the performance measure because, at that time, the performance measure was not being satisfied. Facility leadership ordered the formation of a new work group consisting only of the Service Chiefs of Social Work, Psychiatry, the Community Based Outpatient Care Program (COPS), and the Quality Risk Management Service, their respective administrative leads, and Dr. LB, who was not a service chief but was appointed to the work group as Director of Inpatient Psychiatry. Complainant was not informed of the formation of the new work group and was not included as a group member. (ROI, Tabs B1; B4; C16.)

In May 2012, Complainant became aware that a recent work group meeting had taken place when she was informed of changes decided upon by the work group which affected her staff in Psychiatry Social Work. On May 16, 2012, Complainant sent an email to Mr. WS, inquiring as to why she was not invited to the work group meeting. Mr. WS was out on military duty and did not return until the end of June 2012. He did not respond to her inquiry. (ROI, Tabs B1; B4; B16.)

On May 18, 2012, Complainant applied for the position of Supervisory Social Worker (Assistant Chief of Social Work), GS-0185-13, vacancy announcement no. FZ-656326-LR. She was deemed qualified and scheduled for an interview. On May 29, 2012, she was interviewed, as were 3 other candidates, by a 3-member interview panel which asked the same questions of each of the candidates and individually ranked the answers to the questions numerically. When the interviews were completed and the ranking points totaled, Complainant finished last out of the 4 candidates with 68 total

---

[3] This Summary of Facts section includes only those relevant facts which have been proven by the evidence in the report of investigation. This section does not include irrelevant facts. This section does not include unsubstantiated claims or allegations. In developing the contents of this section, all of the evidence in the record was closely reviewed and considered whether or not specifically mentioned herein.

points. The selectee, Mr. CE, who is considerably younger than Complainant, earned 93 total points. No individual panel member ranked Complainant higher than Mr. CE. On June 12, 2012, Complainant was informed of Mr. CE's selection. (ROI, Tabs B1; B2; B5-B7.)

Complainant testified that in early 2012, the Psychiatry Service was "relocated from the Brecksville, Ohio, campus of the facility, to the Parma, Ohio, campus." Although Complainant worked for the Social Work service, she testified that her work duties most often involved interaction with the Psychiatric Service and that she her presence in Parma was essential. She testified that she requested an office in Parma but that the Psychiatric Service had difficulty finding her an office space. She testified that by June 2012, she had researched the issue and discovered that Dr. DB, the Assistant Chief of Psychiatry had an office at the Parma campus, as well as an office at another location. She determined that Dr. DB's Parma office was "vacant for a majority of the time" and requested to have his office as her own. Her request was denied by Dr. EK, the Chief of Psychiatry. Complainant was informed that Dr. DB did, in fact, utilize and require the office space at the Parma campus. Complainant testified that Dr. DB approached her following her request for his office, displeased by her request. Specifically, she testified:

> He reminded me that he was the Assistant Chief of Psychiatry, basically saying that it was inappropriate that I asked for his office.

On June 20, 2012, Dr. DB informed Complainant that he was replacing her on Psychiatry Grand Rounds Committee in order to give other employees the opportunity to take part in the work of the committee. Dr. DB testified that he discussed the issue with Dr. EK, the Chief of Psychiatry, and Dr. EK agreed with his decision to allow other employees to participate. He testified that his decision to replace her had nothing to do with her age or her prior EEO activity. Complainant testified that removing her from the committee was not based on her age but was "blatant retaliation" by Dr. DB due to her requesting his office at the Parma campus. (ROI, Tabs B1; B3; C15.)

On June 29, 2012, and July 2, 2012, Complainant emailed several management officials expressing her confusion over why she was not invited to the March 2012, work group meeting and why she had not received an answer to her earlier inquiry on the subject. On July 2, 2012, Mr. WS, who had just returned from military duty and had been out of communication during most of May and June 2012, replied to Complainant. In his reply, he explained to her that facility leadership had ordered the development of a new process for achieving the performance measure and that the group working on the new process had new members. Complainant was dissatisfied with the explanation and insisted that she should have been present at the meeting. Dr. LB responded to Complainant by email on July 2, 2012, assuring her that Social Work Service had been represented at the meeting by Mr. JA, the Chief of Social Work. (ROI, Tabs B1; B4; C16.)

4

On August 8, 2012, Complainant sent an email to several management officials requesting information about a decision made by the new work group regarding what constituted a follow-up appointment for a discharged psychiatric patient. Dr. LB responded with a definitive answer to her question. Complainant debated the issue via email citing her knowledge of the issue based on her previous work on the Mental Health Monitor Committee. Dr. LB responded:

> The committee in question no longer exists subsequent to the creation of an upper level management work group, from which now all processes flow, so the point is a moot one and further discussion is unnecessary.

Complainant continued the email discussion despite Dr. LB's observation that further discussion was unnecessary. In response to Dr. LB's email, Complainant stated:

> If the "committee" no longer exists, please make sure I am added to the management group.

Dr. LB responded by stating that Mr. JA, the Chief of Social Work, represents the Social Work Service for the work group. (ROI, Tab C16.)

## ANALYSIS

### 1. Statement of Applicable Law

The law prohibiting discrimination based on reprisal is Title VII of the Civil Rights Act of 1964, as amended, Section 701 et seq., 42 U.S.C. 2000e et seq. ("Title VII"). Discrimination against persons forty years of age and over is prohibited by the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. Section 633a, as amended. The same pattern of analysis developed under Title VII has generally been applied to age discrimination cases. See, O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308 (1996). Federal sector equal employment opportunity regulations are set out in 29 C.F.R. Part 1614.

Generally, the adjudication of a complaint of discrimination alleging disparate treatment under Title VII and/or the ADEA follows a three-step evidentiary analysis. First, the burden is on the complainant to establish a prima facie case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Board of Trustees of Keene State College v. Sweeney, 439 U.S. 24 (1978); Furnco Construction Corporation v. Waters, 438 U.S. 567 (1978). This means that the complainant must present a body of evidence such that, were it not rebutted, the trier of fact could conclude that unlawful discrimination did occur. Teamsters v. U.S., 431 U.S. 324 (1977). A complainant raises an inference of discrimination by showing that the reasons most commonly given by management to justify a particular employment decision or action do not apply in the complainant's case.

5

Second, if the complainant meets the burden of presenting a prima facie case, then management has a burden of production to articulate some legitimate, nondiscriminatory reason for its actions. Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981). The evidence presented by management need not establish management's actual motivation, but must be sufficient to raise a genuine issue of material fact as to whether management discriminated against the complainant. If management meets this burden of production, the presumption of discrimination raised by the prima facie case is rebutted and drops from the case altogether. Burdine, 450 U.S. at 253.

Third, in order to prevail, the complainant must show by a preponderance of the evidence that management's stated reason is a pretext for discrimination. Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); Burdine, 450 U.S. at 256; McDonnell Douglas, supra. The complainant may show pretext by evidence that a discriminatory reason more likely than not motivated management, that management's articulated reasons are unworthy of belief, that management has a policy or practice disfavoring the complainant's protected class, that management has discriminated against the complainant in the past, or that management has traditionally reacted improperly to legitimate civil rights activities. McDonnell Douglas, supra.

The ultimate burden of showing that management intentionally discriminated against the complainant remains at all times with the complainant. United States Postal Service Board of Governors v. Aikens, 460 U.S. 711 (1983); Burdine, 450 U.S. at 257. A finding of pretext – i.e., a finding of sufficient evidence to disbelieve management's stated reason for its decision -- does not necessarily compel a finding of discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993). Proof of pretext is simply one form of circumstantial evidence that is probative of intentional discrimination, and such proof may be quite persuasive. Thus, a complainant's prima facie case, when combined with sufficient evidence to find that management's asserted justification is false, may permit a finding of discrimination. Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097 (2000). This is not to say that such a showing will always be adequate to find discrimination. As the Supreme Court noted in Reeves, there will certainly be instances where, despite such a showing, the record conclusively reveals some other nondiscriminatory reason for management's decision, or if the complainant presented only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination occurred. Thus, for example, if the circumstances show that management gave a false explanation to conceal something other than discrimination, the inference of discrimination will be weak or nonexistent. Reeves, supra (citing Fisher v. Vassar College, 114 F.3d 1332, 1338 (2nd Cir. 1997). Whether a finding of discrimination is appropriate in a particular case will depend on a number of factors, including the strength of the complainant's prima facie case, the probative value of the proof that management's explanation is false, and the strength of other evidence that discrimination did not occur. Reeves, supra.

6

Moreover, the analytical framework in <u>McDonnell Douglas</u> "was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." <u>Furnco</u>, 438 U.S. at 577. Thus, whether or not a complainant has established a prima facie case, where management has provided a legitimate, nondiscriminatory explanation for its action, the factual inquiry must proceed to a decision on the ultimate factual issue in the case -- i.e., whether management's actions were discriminatory within the meaning of Title VII. <u>Aikens</u>, <u>supra</u>.

## Prima Facie Case

The elements of a prima facie case of discrimination are determined by the factual circumstances of the case and the bases of discrimination alleged. <u>McDonnell Douglas</u>, 411 U.S. at 802 n.13. In order to establish a prima facie case of disparate treatment, a complainant must generally show (1) membership in a protected class, (2) an employment situation comparable to that of other employees not of the same protected class, and (3) treatment that is different than that experienced by those other employees with respect to the terms, conditions, or benefits of employment. <u>McDonald v. Santa Fe Trail Transportation Co.</u>, 427 U.S. 273 (1976); <u>Scott v. Secretary of Defense</u>, EEOC Appeal No. 01902727 (September 24, 1990).

Employees are in comparable employment situations when it is reasonable to believe that they would receive the same treatment in the context of a particular employment decision. See, Lindemann & Grossman, <u>Employment Discrimination Law</u>, 3rd Ed., Chapter 2, pp. 30-33 (1996). In order for comparative employees to be considered similarly situated, all relevant aspects of the complainant's situation must be nearly identical to those of the comparative employees. <u>O'Neal v. Postmaster General</u>, EEOC Request No. 05910490 (July 23, 1991); <u>Powell v. Postmaster General</u>, EEOC Appeal No. 01911979 (November 25, 1991). Thus, in order to be similarly situated, the comparative employees must have dealt with the same supervisor and have been subject to the same standards. <u>Mitchell v. Toledo Hospital</u>, 964 F.2d 577 (6th Cir. 1992).

Even in cases where there are no similarly situated employees, a complainant may be able to establish a prima facie case by showing: (1) membership in a protected class; (2) the occurrence of an adverse employment action; and (3) some evidence of a causal relationship between membership in the protected class and the adverse action. <u>Ward v. U.S. Postal Service</u>, EEOC Request No. 05920219 (June 11, 1992), citing <u>Potter v. Goodwill Industries of Cleveland</u>, 518 F.2d 864 (6th Cir. 1975) and <u>Leftwich v. United States Steel Corporation</u>, 470 F. Supp. 758 (W.D. Pa. 1979).

## Age Discrimination

In order to prevail in an age discrimination claim under the ADEA, a complainant must generally show membership in the group of persons protected under the ADEA (*i.e.*, persons age 40 or over); that the complainant was subjected to an adverse employment action; and that the complainant was disadvantaged in favor of a younger person

because of his or her age.  Simpson v. Midland-Ross Corp., 823 F.2d 937 (6th Cir. 1987); Polstorff v. Fletcher, 452 F.2d 17 (D. Ala. 1978) (citing Marshall v. Goodyear Tire & Rubber Co., 554 F.2d 730 (5th Cir. 1977).  The younger person need not be outside the protected group, but must be sufficiently younger than the complainant to permit an inference of discrimination. O'Connor v. Consolidated Coin Caterers Group, supra.

Employers may make subjective judgments for any reason that is not unlawfully discriminatory.  The ADEA is not intended as a vehicle for review of business decisions. Ackerman v. Diamond Shamrock Corp., 670 F.2d 66, 69 (6th Cir. 1982).  The question is not whether the employee was treated fairly but, rather, whether he or she was discriminated against on the basis of age.  Sahadi v. Reynolds Chemical, 636 F.2d 1116, 1118 n.3 (6th Cir. 1980).

## Reprisal

Title VII prohibits employer actions that are based on a retaliatory motive and are likely to dissuade a reasonable employee or applicant from engaging in protected EEO activity. See, Burlington Northern and Santa Fe Railway Co. v. White, 548 U.S. 53, (2006). See, also 42 U.S.C. 2000e – 3(a). In cases involving reprisal, the criteria for establishing a prima facie case may require a showing that (1) the complainant engaged in a protected activity, (2) management was aware of the complainant's participation in the protected activity, (3) management effected some action which adversely impacted upon the complainant following the protected activity, and (4) the management action followed the protected activity within such a period of time that a retaliatory motive can be inferred. Hochstadt v. Worcester Foundation for Experimental Biology, Inc., 425 F. Supp. 318 (D. Mass. 1976), aff'd, 545 F.2d 222 (1st Cir. 1976).

The action required in the third element need not be an ultimate, or even significant, personnel action.  Therefore, any action by a management official likely to dissuade a reasonable employee or applicant from making or supporting a charge of discrimination is sufficient to satisfy this element of a prima facie case of reprisal. Petty slights, minor annoyances, and simple lack of good manners normally will not create such deterrence. See, Burlington Northern, supra. (finding that an assignment to more arduous and less desirable job duties, even if such duties fall within the scope of the complainant's job description, was likely to dissuade the plaintiff from making or supporting a charge of discrimination).  See, also, EEOC Compliance Manual, Vol. 2, Section 8, pp. 8-13 (Retaliation).

However, to ultimately prevail in a case alleging reprisal, it is not sufficient for the complainant to show that his or her protected EEO activity was a motivating factor in the employment action at issue.  The complainant must show that the alleged retaliatory action would not have occurred "but for" his or her participation in protected EEO activity. Univ. of Texas Southwestern Med. Ctr. v. Nassar, U.S. No. 12-484 (2013).

8

**Harassment**

Discriminatory harassment based on age and/or reprisal consists of personal slurs or other denigrating or insulting verbal or physical conduct relating to an individual's age and/or prior EEO activity. See, e.g., 29 C.F.R. Section 1606.8 (national origin discrimination). Harassment directed against an individual because of that individual's age and/or prior EEO activity may violate the ADEA or Title VII. Davis v. U.S. Postal Service, EEOC Appeal No. 01832914 (July 23, 1987); Criner v. Department of the Navy, EEOC Request No. 05880097 (July 21, 1988).

In cases involving harassment, court and EEOC decisions have modified somewhat the McDonnell Douglas analytical approach in order to achieve "a sensible, orderly way to evaluate the evidence." To establish a prima facie case of harassment, the complainant must show: (1) membership in a protected class; (2) unwelcome personal slurs or other denigrating or insulting verbal or physical conduct ; (3) that the harassment complained of was based on the complainant's membership in the protected class; and (4) that the harassment was sufficiently severe or pervasive to affect a term or condition of employment, and/or that the harassment had the purpose or effect of unreasonably interfering with complainant's work performance and/or that the harassment had the purpose or effect of creating an intimidating, hostile, or offensive work environment. Compare McGinnis v. Secretary of Defense, EEOC Appeal No. 01902760 (November 15, 1990); Sexton v. U. S. Marine Corps, EEOC Appeal No. 01821475 (August 30, 1983); Cudjoe v. Secretary of the Navy, EEOC Appeal No. 01880743 (June 14, 1988); 29 C.F.R. Section 1604.11 (sexual harassment). In cases involving harassment by coworkers, the complainant must also show as part of the prima facie case that management failed to take prompt and appropriate action although it was aware of the harassment. Lutticken v. Secretary of Health and Human Services, EEOC Request No. 05900386 (April 27, 1990).

For harassment to be considered discriminatory, it must be severe or pervasive. Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993). Actual psychological or emotional injury is not required. Harris, supra. However, unless the conduct is very severe or persistent, a single incident or group of isolated incidents will not be regarded as discriminatory harassment. See e.g. Scott v. Sears Roebuck and Co., 798 F.2d 210 (7th Cir. 1986); Hansen v. Rice, EEOC Appeal No. 01920621 (September 10, 1992). "Harassment, as the term is used in Title VII cases, refers to more than being subjected to stress." Lin v. U.S. Postal Service, EEOC Appeal No. 01932880 (December 23, 1993).

The following factors are pertinent to determining whether a work environment is hostile, intimidating, or abusive: (1) whether the conduct in question is verbal or physical, or both; (2) whether the conduct was repeated, and, if so, how frequently; (3) whether the conduct was hostile or patently offensive; (4) whether the alleged harasser was a supervisor or a coworker; (5) whether more than one person joined in the harassment; and (6) whether the harassment was directed at more than one individual. King v. Hillen, 21 F.3d 1572 (Fed. Cir. 1994); Crane v. Postmaster General, EEOC Appeal No. 01924585 (April 22, 1993). Evidence of the general working atmosphere involving

9

employees other than the complainant is also relevant to the issue of whether a hostile work environment exists. Vinson v. Taylor, 753 F.2d 141 (D.C. Cir. 1985), aff'd in relevant part and rev'd in part, sub nom Meritor Federal Savings Bank v. Vinson, 477 U.S. 57 (1986); Delgado v. Lehman, 665 F. Supp. 460 (E.D. Va. 1987).

The conduct in question should be evaluated from the standpoint of a reasonable person, taking into account the particular context in which it occurred. Highlander v. K.F.C. National Management Co., 805 F.2d 804 (6th Cir. 1986). Conduct that is not severe or pervasive enough to create an objectively hostile or abusive environment -- an environment that a reasonable person would find hostile or abusive -- is beyond Title VII's purview. Furthermore, if the complainant does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of employment, and there is no Title VII violation. Harris, supra.

A prima facie case of harassment may be rebutted by the production of evidence to show that: (1) the alleged conduct did not occur; (2) the conduct complained of was not unwelcome; and/or (3) the alleged harassment was not sufficiently severe or pervasive to adversely affect the complainant's employment opportunities, to unreasonably interfere with the complainant's performance, or to create an abusive working environment. Even where harassment has occurred, management may avoid Title VII liability for the harassment by showing that: (1) management took prompt and appropriate remedial action as soon as it became aware of the circumstances (a defense which applies only to harassment by coworkers); and/or (2) there is no basis under agency principles for imputing liability to the employer. McGinnis, EEOC Appeal No. 01902760; Quinn v. Postmaster General, EEOC Request No. 05900546 (August 23, 1990); Crane, EEOC Appeal No. 01924585.

An employer is liable for harassment created by a supervisor who is authorized to take tangible employment actions against a victimized employee. The supervisor must have the power to make a significant change in the employee's employment status, such as through hiring, firing, failing to promote, reassignment with significantly different responsibilities or causing a significant change in benefits. See, Vance v. Ball State University, U.S. No. 11-556 (2013). However, where no tangible employment action has been taken by the supervisor, the employer may avoid liability by showing: (1) that the employer exercised reasonable care to prevent and correct promptly any harassing behavior; and (2) that the complainant unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise. The employer may not avoid liability when the supervisor's harassment culminates in a tangible employment action such as discharge, demotion, or undesirable reassignment. Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998); Faragher v. City of Boca Raton, 524 U.S. 775 (1998). See, also, Deffenbaugh-Williams v. Wal-Mart Stores, 156 F.3d 581, (5th Cir. 1998) (applying the liability principles in sexual harassment cases established in Faragher and Ellerth to claims of racial harassment).

10

A showing of discriminatory harassment "must include discrete comments directed against the complainant or disparate treatment which supports an inference of discriminatory harassment." Lin, EEOC Appeal No. 01932880. Accordingly, it is appropriate to review a complainant's allegations under a disparate treatment analysis where there is no direct evidence of discriminatory harassment, that is, where there is no evidence of personal slurs or other denigrating or insulting verbal or physical conduct relating to the complainant's membership in a protected class.

Applying the foregoing principles to the complainant's allegation of discriminatory harassment, we must first determine whether the alleged discriminatory conduct occurred. Then we must determine whether the conduct that occurred constitutes harassment within the meaning of Title VII. If discriminatory harassment is found, we must then determine whether management is liable for the harassment.

**2. Discussion**

**Harassment**

Complainant belongs to a protected class under the ADEA because she is over 40. She also showed that she belongs to a protected class under Title VII because she has engaged in prior EEO activity. However, she failed to provide adequate evidence to establish that she was subjected to unwelcome personal slurs or other denigrating or insulting verbal or physical conduct based on her age or prior EEO activity. (ROI, Tabs B1-B7.)

Complainant claimed that she was subjected to a hostile work environment based on her age and prior EEO activity when management excluded her from the Mental Health 7-Day Monitor Committee and did not appoint her as a member of the newly formed work group responsible for the mental health monitor initiative. However, when questioned by the investigator in this case she testified specifically, "I do not believe my denial (of her request to be in the work group) was due to age. It was due to retaliation." When the investigator asked her to specifically present her evidence and explain why she believed it was due to retaliation, she testified:

> I've been actively involved in the mental health monitor since it began in 2009, and I have hundreds of documents, including my participation and involvement through the years. The fact that my staff was informing me of changes in their obligations to this monitor, which affected their workload and time management, was an embarrassment as their supervisor and discredited me given that I previously informed my staff, not Dr. LB.
>
> Dr. LB was disrespectful to me as a supervisor. She went over my head to my staff without conversing with me, which she has no authority to do. I was purposely being kept

11

out of the loop, which made me look foolish as a supervisor. Dr. LB is given a great deal of power and control, and it can be used in unfortunate manners, such as the retaliation against me. I put an enormous amount of effort into this monitor through the years, and Dr. LB knows it. She is more than aware of all the efforts I've put into this. Mr. JA did not attend any previous monitor meetings, nor had he ever represented me in one. Dr. LB did not provide truthful information when she said that Mr. JA was the Social Work representative, which he blatantly denied. Neither Dr. LB nor Dr. EK responded to my e-mails regarding my request to be added to the work group. Dr. LB's actions and behaviors are unacceptable, unethical, and highly unprofessional from someone who has such a high position in Psychiatry Service as a medical manager of the Acute Inpatient Psychiatry Ward.

In sum, the events that I have described all happened within three months, and I have suffered repeated retaliation and discrimination. As a psychiatric provider, social worker, and Agency employee, I am saddened by the actions and behaviors of my colleagues. I have chosen to stand up against some very powerful individuals at the medical center because I respect myself enough to fight for what I know is right.

Otherwise Complainant produced no evidence to establish that her exclusion from the work group was based on her prior EEO activity. She did not present witnesses or other evidence to corroborate her testimony. Moreover, she did not present evidence to show that her age or prior EEO activity were factors in her exclusion from the committee rather than management's stated reason, i.e., that the previous committee was disbanded because it had not achieved the desired results and the new committee included new members with new ideas. (ROI, Tabs B1-B7.)

Complainant claimed in this complaint that she was subjected to a hostile work environment based on her age and prior EEO activity when, on June 20, 2012, Dr. DB removed her from the Psychiatry Grand Rounds Committee. However, she testified that she was not removed from the committee based on age discrimination but, rather, due to retaliation for requesting to use Dr. DB's office as her own. She did not present evidence to show that Dr. DB replacing her on the committee was in any way related to her prior EEO activity. She did not present evidence to refute Dr. DB's testimony that he removed her from the committee to give other employees an opportunity to participate, not based on her prior EEO activity. (ROI, Tabs B1-B7.)

Complainant testified that she was subjected to a hostile work environment based on her age and prior EEO activity when Mr. CE, a considerably younger individual, was

12

selected for the position of Supervisory Social Worker, a position for which Complainant applied and was interviewed.  Complainant testified, as evidence that the selection was based on her age, that she is far more qualified than the selectee who is considerably younger than her.  She did not provide evidence to corroborate her testimony.  In fact, evidence in the record, including the resumes and interview scoring sheets of Complainant and the selectee, as well as Complainant's own testimony, supports management's testimony that Mr. CE was better suited for the position than Complainant, particularly because he discussed during the interview experience specifically relevant to supervisory social work, while Complainant mainly discussed her prior business experience in her family-run business. (ROI, Tabs B1; B6; B7; C7; C8; C10.)

Also, Complainant testified that Mr. JA and Mr. DG, two of the interview panel members, retaliated against her due to her resistance to supporting the Agency during an employee's EEO complaint in 2010.  Specifically, she testified:

> I believe retaliation is based in part on conversation I had around November 2010 with both Mr. JA and Mr. DG regarding an EEO investigation for a complaint filed by an Agency employee.  Mr. DG and I were asked to respond to an EEO complaint not directly related to us; however, it was one of my employees.

> I had conversations with Mr. DG and Mr. JA about the situation, given it was my first EEO experience.  I asked Mr. JA for advice. His remark was, "Good luck with that." I was persistent, and spoke with him about the process and the questions, and he had some comments regarding how to manage the questions in a diplomatic way.

> Mr. DG and I reviewed the investigator's questions together as well, discussing the various ways they could be answered. We discussed the impact of the EEO case on the Agency, Social Work, and also how it would affect the future of the person who filed the claim.  The discussion was more negative than positive.  You might say I have firsthand knowledge of the ramifications of standing up yourself against a federal agency.

Panel members, including Mr. DG, Mr. JA, and Ms. MN, testified that they did not consider Complainant's age or prior EEO activity when they selected Mr. CE rather than Complainant.  They denied Complainant's allegation that they attempted to coerce Complainant into testifying falsely in a previous EEO complaint filed by one of Complainant's employees, and Complainant failed to provide evidence to refute their denials. (ROI, Tabs B1; B2; B6; B7.)

13

Based on the entirety of evidence in the record, we find that Complainant failed to establish a nexus between the issues alleged in her harassment claim and her protected classes. Therefore, we find that Complainant failed to prove that she was subjected to harassment based on her age or prior EEO activity.

### Prima Facie Case – Disparate Treatment and Reprisal

When management has articulated reasons for the actions a complainant has alleged to be discriminatory, it is appropriate to bypass the prima facie case and move directly to management's stated reasons and the complainant's pretext evidence. In this case, management has provided reasons for its actions. *See*, Aikens, *supra*.

### Management's Responses

Relevant management officials from the interview panel for the position of Assistant Chief of Social Work testified that they did not discriminate or retaliate against Complainant when they selected Mr. CE for the position. Rather, they testified that they chose Mr. CE instead of Complainant because he provided better specific examples of how to implement changes in an organizational setting. Specifically, they testified that Mr. CE was more impressive than Complainant because he provided good examples of how a Social Work supervisor should solve problems while Complainant emphasized her work history in private business. Their testimony is supported by evidence in the record. (ROI, Tabs, B2; B6; B7; C7; C8; C10.)

Dr. DB denied discriminating or retaliating against Complainant and testified that he replaced Complainant on the Grand Rounds Committee in order to allow other employees to have an opportunity to participate on the committee. He testified that he received permission from the Chief of Psychiatry before he implemented the replacement. (ROI, Tabs B1-B7; C15.)

Relevant management officials testified that Mental Health Monitor Committee that Complainant was on in the past was disbanded in 2011, and a new work group was formed by facility management which included only service chiefs and other select individuals. They testified that the previous committee failed to achieve its goal, so it was replaced with a new committee with new members. They testified that Complainant was not excluded from the new work group due to her age or prior EEO activity. Rather, they testified, she was excluded from the new committee because the Chief of Social Work represented Social Work in the new work group. (ROI, Tabs B1-B7; C16.)

We find these to be legitimate, nondiscriminatory responses.

### Pretext

Complainant presented as evidence of pretext and discrimination only her own subjective testimony reflecting her belief that she was excluded from the mental health

monitor work group, replaced on the Grand Rounds Committee, and not selected for the Assistant Chief of Social Work position based on her age and prior EEO activity. She did not present evidence to corroborate her testimony. She did not present adequate evidence to refute management's legitimate, nondiscriminatory responses. (ROI, Tab B1.)

It is a fact that Mr. CE, the selectee for the Assistant Chief of Social Work position was considerably younger than Complainant. However, management officials testified that he was also considerably more impressive during his interview than Complainant, particularly concerning his relevant skills. Evidence in the record supports management's testimony. Complainant did not provide adequate evidence to refute management's testimony. (ROI, Tab B1.)

Complainant testified that Dr. DB replaced her on the Grand Rounds Committee as retaliation for requesting to use his Parma office as her own. We find her testimony to be inadequate evidence of reprisal for prior EEO activity. She also testified that her replacement on the committee was not associated with her age. (ROI, Tab B1.)

Complainant testified that she was excluded from the mental health monitor work group based on her prior EEO activity, not her age. She offered as evidence of reprisal her testimony reflecting that Dr. LB had too much power and misused it, particularly against Complainant. We find her testimony to be inadequate evidence to refute management's legitimate, nondiscriminatory response. (ROI, Tab B1.)

Generally, a complainant's testimony alone has been judged inadequate as proof to establish pretext. Bohrer v. Hanes Corporation, 715 F.2d 213 (5th Cir. 1983), cert. denied, 465 U.S. 1026 (1984). Furthermore, a complainant's subjective belief that the management actions at issue were the result of discrimination is insufficient to prove pretext. See, Bohrer, supra; Elliott v. Group Medical & Surgical Service, 714 F.2d 566 (5th Cir. 1983), cert. denied, 467 U.S. 1215 (1984).

For these reasons, and based on the entirety of evidence in the record, we find that Complainant failed to prove that management's responses were actually pretext for discrimination and/or reprisal.

## CONCLUSION

Complainant failed to prove that she was discriminated against as claimed.

## RIGHT OF APPEAL

Within 30 days of receipt of this final decision, the complainant has the right to appeal it to: **Equal Employment Opportunity Commission, Office of Federal Operations, P.O. Box 77960, Washington, D.C. 20013**. If an appeal is filed, EEOC Form 573 should be used. A copy of EEOC Form 573 is attached.

A copy of the appeal to the EEOC **must** also be sent to the VA Office of General Counsel at the following address:  **Department of Veterans Affairs, Office of the General Counsel (024), 810 Vermont Ave., N.W., Washington, D.C. 20420**.

Statements or briefs in support of the appeal **must** be submitted to the EEOC within 30 calendar days of the filing of the appeal.  A copy of any such statement or brief, including any statements made on EEOC's "Appellant Docketing Statement", must also be sent to the VA's Office of General Counsel at the above address.

If an appeal is filed with the EEOC, the appeal, and any subsequently filed statement or brief, **must** contain a statement certifying the date and method by which copies of these documents were served on the VA's Office of General Counsel.

If the complainant files an appeal with the Commission beyond the above-noted time limit, the complainant should provide the Commission with an explanation as to why the appeal should be accepted despite its untimeliness.  If the complainant cannot explain why timeliness should be excused, the Commission may dismiss the appeal as untimely.

### RIGHT TO FILE A CIVIL ACTION

The complainant also has the right to file a civil action in an appropriate United States District Court.  The complainant may file a civil action

> within 90 days of receipt of this final decision if no appeal to EEOC has been filed; or

> within 90 days after receipt of the EEOC's final decision on appeal; or

> after 180 days from the date of filing an appeal with the EEOC if there has been no final decision by the Commission.

The complainant **must** name the person who is the official head of the Department of Veterans Affairs as the defendant.  Department means the national organization, and not just the local office, facility, or unit in which the complainant works.  The complainant may not name just the Department.  The complainant must name **Eric K. Shinseki** as the defendant.  The complainant must also state the official title of the Department head.  The official title of the head of the Department of Veterans Affairs is **Secretary of Veterans Affairs**.  Failure to provide the name or official title of the head of the Department may result in dismissal of the case.

If the complainant decides to file a civil action under Title VII (discrimination due to race, color, religion, sex, national origin, or reprisal) or under the Rehabilitation Act of 1973, as amended, (discrimination due to disability), and if the complainant does not have or cannot afford the services of an attorney, the complainant may request that the Court appoint an attorney to represent the complainant and that the Court permit the

complainant to file the action without payment of fees, costs, or other security.  **The grant or denial of the request is within the sole discretion of the Court.**  Filing a request for an attorney does not extend the time in which to file a civil action.  Both the request and the civil action <u>MUST BE FILED WITHIN NINETY (90) CALENDAR DAYS</u> of the date the complainant receives the final decision from the Department or the Commission.


JAN 2 8 2014

MAXANNE R. WITKIN
Director, Office of
Employment Discrimination
Complaint Adjudication

Date

Attachment:  EEOC Form 573

17