PAULA LELIGDON

VS.

VETERANS ADMINISTRATION

I, Susan Fuehrer, hereby swear or affirm:

I am submitting this statement in response to the investigation of the complaint of discrimination filed by Paula Leligdon on August 30, 2013 against the VA.

I understand that the allegations accepted for investigation are:

*Whether the complainant was subjected to a hostile work environment based on reprisal for prior EEO activity as evidenced by the following events:*
1) *In August 2012, CE acknowledged that he was aware of the rumors and gossip going around the Medical Center about the complainant and he failed to act after the compliant [SIC] advised him that she was being harassed by her subordinates.*
2) *In November 2012, Jason Gatliff (JG), Head of Ethics Committee, stated he had difficulty working with the complainant due to the rumors, gossip and negative talk about her that was going around the Medical Center, admitted he participated in said gossip and rumors, and that he was aware of her EEO complaint.*
3) *In June 2012 and November 2012, management failed to act when the complainant advised them of the bullying, rumors and gossip being spread about her throughout the VA Medical Center.*
4) *On March 15 2013 [SIC], Susan Fuehrer, Director, failed to act after the complainant advised her about JG's admission that he had difficulty working with her and his participation in spreading rumors, gossip and negative talk about her.*
5) *In May 2013, just prior to the May 20th meeting, Joseph Aquilina (JA), Chief of Social Work Services, and Christopher Esmurdoc (CE), Assistant Chief of Social Work, Immediate Supervisor initiated a "witch-hunt" on the complainant by soliciting reports of contact (ROCs) from her subordinates, and contacting HR and EEO regarding an inquiry/investigation against her.*
6) *On May 20, 2013, during a meeting, CE threatened to discipline the complainant for alleged insubordination.*
7) *On June 3, 2013, CE and JA issued the complainant four different ROCs, which were dated May 14, 2013, May 20, 2013, May 21, 2013, and May 29, 2013, respectively.*
8) *On July 22, 2013, CE threatened to remove the complainant from the Professional Standards Review Board (PSRB) if she refused to assume increased duties.*
9) *On July 31, 2013, CE issued the complainant two Counseling Plans.*

Case 200H-V110-2013103868
Paula Leligdon, Complainant

Susan Fuehrer, Affiant
*sf* (initials)

Page 1

GOVERNMENT EXHIBIT D

00321

Tab B-4 p. 281

LELIGDON-000321

10) *From July 2012 to October 16, 2013, JA and CE failed to support and/or have undermined the complainant's supervisory position and responsibilities.*
11) *On October 8, 2013, CE charged the complainant two hours for being absent without leave (AWOL).*
12) *On October 16, 2013, CE charged the complainant fifteen minutes AWOL.*
13) *On October 23, 2013, CE issued a third Counseling Plan to the complainant.*

*NOTE: Events 1 through 13 were accepted for investigation as a hostile work environment. Events 11, 12, and 13 also were accepted for investigation as discrete acts of discrimination.*

Questions:

1. Please state your full name for the record.

Answer: Susan M. Fuehrer

2. What is your current position, title, series, and grade at the VA? At which facility/facilities do you work?

Answer: Medical Center Director, Healthy Systems Administrator, Senior Executive Service

3. How long have you held that position with the VA?

Answer: 3 years

4. Who do you report to in your position with the VA? Please identify your first line, second line, and third line supervisors.

Answer:   First Line: Jack G. Hetrick, VISN 10 Network Director
          Second Line: vacant
          Third Line: Randy Petzel, MD, UnderSecretary for Health

5. Can you please provide a very brief description of your job duties in the position that you hold at the VA?

Answer: I am responsible for the patient care of 107,280 unique Veterans seen each year at 15 locations for a medical center that has 4,500 employees and an operating budget of $850,000,000.

6. This claim is based on reprisal for prior EEO activity. Do you have any prior EEO activity against the Agency?

Case 200H-V110-2013103868
Paula Leligdon, Complainant

Susan Fuehrer, Affiant
(initials)

Page 2

Tab B-4 p. 282

00322

LELIGDON-000322

Answer: I have never filed an EEO complaint.

7. Do you know the complainant in this case, Paula Leligdon? How do you know her? How would you describe your working relationship with her? Have you served in a supervisory capacity with the complainant? When did you serve as her supervisor and for how long?

Answer: Yes. I know Ms. Leligdon as a Supervisory Social Worker. I have had limited personal contact with Ms. Leligdon.

8. Do you know whether or not the complainant has any prior EEO activity against the Agency? What are you aware of? When and how did you become aware of it?

Answer: Yes. I have been interviewed for prior complaints made by Ms. Leligdon. I am not sure if I first learned of the complaints from emails from Ms. Leligdon or from an EEO investigator.

   1) **In August 2012, CE acknowledged that he was aware of the rumors and gossip going around the Medical Center about the complainant and he failed to act after the compliant [SIC] advised him that she was being harassed by her subordinates.**

9. Are you familiar with the allegation at issue in this claim? If so, please describe what you know about it, including whether or not Mr. Esmurdoc acknowledged that he was aware of the rumors and gossip going around the Medical Center about the complainant, when Mr. Esmurdoc acknowledged that fact if he did and in what context, and whether or not Mr. Esmurdoc failed to act after the complainant advised him that she was being harassed by her subordinates.

Answer: I am not aware of any rumors or gossip going around the Medical Center about the complainant or if and when they were acknowledged by Mr. Esmurdoc.

   2) **In November 2012, Jason Gatliff (JG), Head of Ethics Committee, stated he had difficulty working with the complainant due to the rumors, gossip and negative talk about her that was going around the Medical Center, admitted he participated in said gossip and rumors, and that he was aware of her EEO complaint.**

10. Are you familiar with the allegation at issue in this claim? If so, please describe what you know about it, including whether or not Mr. Gatliff stated that he had difficulty working with the complainant due to the rumors, gossip, and negative talk about her going around the Medical Center, when Mr. Gatliff made that statement if he did and in what context, whether or not Mr. Gatliff admitted that he participated in the gossip and rumors, when Mr. Gatliff admitted that if he did and in what context, how he

Case 200H-V110-2013103868
Paula Leligdon, Complainant

Susan Fuehrer, Affiant
(initials)

Page 3

Tab B-4 p. 283
00323
LELIGDON-000323

participated in the gossip and rumors about the complainant and what he said about her, whether or not Mr. Gatliff stated that he was aware of her EEO complaint, and whether or not you have knowledge of Mr. Gatliff being aware of the complainant's EEO complaint and how he became aware of it.

Answer: On March 15, 2013 at 10:44 am the Chief of Staff and I received an email from the complainant grieving her performance rating of fully successful. In the two page document there was one paragraph with direct quote, "Perhaps, Aquilina, Goldstein and Esmurdoc's view and inability to rate me fairly was also influences (sic) by similar factors which have affected Jason Gatliff (Head of Ethics at the VA Medical Center), who stated he found it difficult to work with me due to what he had heard about me, the rumors/gossip/negative talk going around the Medical Center about me." At 3:08 pm that same day I responded to complainant and asked, direct quote, "Ms. Leligdon, Could you please forward so that a copy can be provided to Human Resource Management Service for their files? It is important a complete file of all correspondence is maintained." I never received a version that could be printed, forwarded or copied. I do not know if Mr. Gatliff has any knowledge of any EEO complaint by the complainant. I am aware that the complainant alleges Mr. Gatliff's statements. To my knowledge this allegation has not been substantiated.

3) **In June 2012 and November 2012, management failed to act when the complainant advised them of the bullying, rumors and gossip being spread about her throughout the VA Medical Center.**

11. Are you familiar with the bullying, rumors, and gossip being spread about the complainant throughout the VA Medical Center? If so, can you please describe what you are aware of, including when the bullying, rumors, and gossip took place, what was said about the complainant, who was involved in engaging in that activity, and when and how you became aware of it.

Answer: I am not aware of any rumors or gossip being spread about the complainant throughout the medical center. I am aware Ms. Leligdon has made allegations of such. The Medical Center is trying to complete an Administrative Investigation Board regarding her complaints; but, Ms. Leligdon and her attorney have not been available, or willing, to participate as of this date.

12. Did the complainant advise you of the bullying, rumors, and gossip being spread about her in June 2012 and November 2012? What did she tell you and when? Was it communicated verbally or in writing? If verbally, please describe exactly what was said, when it was said, and to whom it was said. What was management's verbal response when the complainant relayed this information? If in writing, please provide a copy of this written communication and any response received.

Case 200H-V110-2013103868
Paula Leligdon, Complainant

Susan Fuehrer, Affiant
X /s/
(initials)

Page 4

Tab B-4 p. 284

LELIGDON-000324

00324

Answer: I was not aware of any complaints dating back to June, 2012. On December 21, 2012 I was copied on an email for a FOIA request from Merl H. Wayman, Esq. for all documents related to Ms. Leligdon. This FOIA request was completed on 2/27/13 by the Privacy Officer.

13. Did the complainant advise you or anyone in management that the bullying, rumors, and gossip were being spread about her throughout the VA Medical Center based on any protected category, such as her sex, race, religion, age, national origin, disability, or prior EEO activity? Please explain.

Answer: Not based on a protected category. As previously stated, only via and encrypted, locked email grieving her fully successful performance rating.

14. How did management respond when the complainant stated that she was subjected to bullying, rumors, and gossip that were being spread about her through the VA Medical Center in June 2012 and November 2012? What exactly was said or done to respond?

Answer: There have been numerous attempts to discuss, mediate, and review complainant's EEO, MSPB, performance appraisal grievances internally and through several different legal counsels.

15. Was any investigation conducted into the allegations that the complainant raised about the bullying, rumors, and gossip being spread about her? If so, please describe the investigation, who conducted it, when it was conducted, and the result of the investigation.

Answer: There have been reviews by the EEO Manager, the Minority Affairs Manager, Social Work leaders regarding the complainant's allegations. In November, 2013 an AIB was chartered with staff external to the Medical Center; but, the AIB team has not been successful in meeting with the complainant as she has never been available as of this date despite numerous attempts.

4) **On March 15 2013 [SIC], Susan Fuehrer, Director, failed to act after the complainant advised her about JG's admission that he had difficulty working with her and his participation in spreading rumors, gossip and negative talk about her.**

16. Did the complainant advise you about Mr. Gatliff's admission that he had difficulty working with her and his participation in spreading rumors, gossip, and negative talk about her? What was the context of your discussion? What exactly did she tell you? Did the complainant advise you of this fact verbally or in writing? If in writing, please provide a copy of the written communication and any response.

Case 200H-V110-2013103868
Paula Leligdon, Complainant

Susan Fuehrer, Affiant

Page 5

(initials)

Tab 6-4 p. 285

00325

LELIGDON-000325

Answer: On March 15, 2013 at 10:44 am the Chief of Staff and I received an email from the complainant grieving her performance rating of fully successful. In the two page document there was one paragraph with direct quote, "Perhaps, Aquilina, Goldstein and Esmurdoc's view and inability to rate me fairly was also influences (sic) by similar factors which have affected Jason Gatliff (Head of Ethics at the VA Medical Center), who stated he found it difficult to work with me due to what he had heard about me, the rumors/gossip/negative talk going around the Medical Center about me." At 3:08 pm that same day I responded to complainant and asked, direct quote, "Ms. Leligdon, Could you please forward so that a copy can be provided to Human Resource Management Service for their files? It is important a complete file of all correspondence is maintained." I never received a version that could be printed, forwarded or copied. I do not know if Mr. Gatliff has any knowledge of any EEO complaint by the complainant. I am aware that the complainant alleges Mr. Gatliff's statements. To my knowledge this allegation has not been substantiated. I cannot provide a copy because it cannot be printed, copied or forwarded. This is how the majority of the correspondence was sent from complainant.

17. How did you respond when the complainant informed you of this fact? What did you say? What did you do?

Answer: See above.

18. Did you fail to act after the complainant advised you of Mr. Gatliff's admission that he had difficulty working with her and his participation in spreading rumors, gossip, and negative talk about her?

Answer: No. There has been continuous follow-up to the myriad of complaints made by the complainant at all levels of the organization. Specific to Mr. Gatliff, the statement was embedded in a document for review of complainant's performance rating of fully successful.

19. Did you ever follow up with Mr. Gatliff about his alleged admission that he had difficulty working with the complainant as well as his participation in spreading rumors, gossip, and negative talk about her? If so, please describe when you followed up with him about these matters, the context of your discussion, and how you addressed these matters. If you did not follow up with Mr. Gatliff, please explain why you did not do so.

Answer: I did not personally follow-up with Mr. Gaitliff.

5) In May 2013, just prior to the May 20th meeting, Joseph Aquilina (JA), Chief of Social Work Services, and Christopher Esmurdoc (CE), Assistant Chief of Social Work, Immediate Supervisor initiated a "witch-hunt" on the complainant by soliciting reports of contact (ROCs) from her subordinates, and contacting HR and EEO regarding an inquiry/investigation against her.

Case 200H-VI10-2013103868
Paula Leligdon, Complainant

Susan Fuehrer, Affiant
(initials)

Page 6

Tab B-4 p. 286

00326

LELIGDON-000326

20. Are you familiar with the allegation at issue in this claim? If so, please describe what you know about it, including whether or not Mr. Aquilina and Mr. Esmurdoc initiated a "witch-hunt" on the complainant, whether or not they solicited reports of contact from the complainant's subordinates, whether or not they contacted EEO and HR about initiating an inquiry/investigation against the complainant, and the reasons for their actions.

Answer: I am only aware of complaints the complainant's employees made against her. The EEO Manager chartered a review and no validation of the complaints was found.

> **6) On May 20, 2013, during a meeting, CE threatened to discipline the complainant for alleged insubordination.**

21. Are you familiar with the allegation at issue in this claim? If so, please describe what you know about it, including whether or not Mr. Esmurdoc threatened to discipline the complainant for alleged insubordination during a meeting in May 20, 2013, what exactly he said to the complainant, what the alleged insubordination was, what type of disciplinary action he threatened to bring against the complainant and why, and how the complainant responded.

Answer: Not directly. I know there have been several instances where the complainant has not followed medical center policy with respect to conduct; but, I am not aware of any specific example.

> **7) On June 3, 2013, CE and JA issued the complainant four different ROCs, which were dated May 14, 2013, May 20, 2013, May 21, 2013, and May 29, 2013, respectively.**

22. Are you familiar with the allegation at issue in this claim? If so, please describe what you know about it.

Answer: No.

> **8) On July 22, 2013, CE threatened to remove the complainant from the Professional Standards Review Board (PSRB) if she refused to assume increased duties.**

23. Are you familiar with the allegation at issue in this claim? If so, please describe what you know about it, including whether or not Mr. Esmurdoc threatened to remove the complainant from the PSRB if she refused to assume increased duties and why, what increased duties she was asked to assume, and whether or not she was removed from the PSRB.

Case 200H-VI10-2013103868
Paula Leligdon, Complainant

Susan Fuchrer, Affiant
(initials)

Page 7

Tab B-4 p. 287

00327

LELIGDON-000327

Answer: Somewhat. I am not aware of any threat. I do know that the PSRB rotates membership and the complainant was not renewed when membership was rotated. I am aware that the complainant's attendance was poor at PSRB meetings. I am not aware of any threat or discussion tied to increased duties.

### 9) On July 31, 2013, CE issued the complainant two Counseling Plans.

24. Are you familiar with the allegation at issue in this claim? If so, please describe what you know about it, including when the two Counseling Plans were issued to the complainant and why they were issued.

Answer: No.

### 10) From July 2012 to October 16, 2013, JA and CE failed to support and/or have undermined the complainant's supervisory position and responsibilities.

25. Are you familiar with the allegation at issue in this claim? If so, please describe what you know about it, including whether or not and how Mr. Aquilina and Mr. Esmurdoc failed to support and/or undermined the complainant's supervisory position and responsibilities between July 2012 and October 2013 and why you believe they did so if they did.

Answer: No. I can offer that my discussions with JA and CE have been positive in trying to establish an improved and productive working relationship with the complainant. In addition the EEO Manager, the Chief of Staff, and representatives from Human Resource Management have also tried to establish a positive working relationship. Unfortunately all efforts have been futile.

### 11) On October 8, 2013, CE charged the complainant two hours for being absent without leave (AWOL).

26. Are you familiar with the allegation at issue in this claim? If so, please describe what you know about it, including whether or not Mr. Esmurdoc charged the complainant with two hours for being AWOL on or around October 8, 2013, why she was charged with AWOL, and whether or not you believe that Mr. Esmurdoc charged the complainant with AWOL in reprisal for her prior EEO activity.

Answer: No. I may have been copied on emails but I am not directly aware of the allegation. The complainant has included me on numerous emails regarding leave.

### 12) On October 16, 2013, CE charged the complainant fifteen minutes AWOL.

Case 200H-V110-2013103868
Paula Leligdon, Complainant

Susan Fuehrer, Affiant
(initials)

Page 8

Tab B-4 p. 288
00328
LELIGDON-000328

27. Are you familiar with the allegation at issue in this claim? If so, please describe what you know about it, including whether or not Mr. Esmurdoc charged the complainant with fifteen minutes for being AWOL on or around October 16, 2013, why she was charged with AWOL, and whether or not you believe that Mr. Esmurdoc charged the complainant with AWOL in reprisal for her prior EEO activity.

Answer: No. I may have been copied on emails but I am not directly aware of the allegation. There are too many to recall specifics.

**13) On October 23, 2013, CE issued a third Counseling Plan to the complainant.**

28. Are you familiar with the allegation at issue in this claim? If so, please describe what you know about it, including when the third Counseling Plan was issued to the complainant, why it was issued, and whether or not you believe that Mr. Esmurdoc issued the Counseling Plan to the complainant in reprisal for her prior EEO activity.

Answer: No.

**Questions Related to All Claims:**

29. Was it your intent to subject the complainant to a hostile work environment based on the thirteen incidents above? Please explain.

Answer: No.

30. Do you believe that the thirteen incidents were sufficiently severe or pervasive to adversely affect the complainant's employment opportunities, to unreasonably interfere with the complainant's performance, or to create an abusive working environment? Why or why not? Please explain.

Answer: No. I have not seen evidence of merit in these incidents adversely affect the complainant's employment opportunities. I have seen evidence of the complainant being rude to her Supervisor, and others to include the acute inpatient psychiatrist, and not following medical center policy for time and leave that may adversely affect her employment opportunities. Additionally, I have witnessed the complainant to stand in the back of the room of meetings such as New Supervisor Orientation and the Quality Safety Value Committee meeting. The complainant is not a participant in these meetings and her attendance detracts from her duties that should be devoted to care of Veterans.

31. Was it your intent to subject the complainant to a hostile work environment based on her prior EEO activity in connection with the thirteen incidents identified above? Do you believe that any other management official(s) involved had the intent to subject

Case 200H-V110-2013103868
Paula Leligdon, Complainant

Susan Fuehrer, Affiant
(initials)

Page 9

Tab B-4 p. 289
00329
LELIGDON-000329

the complainant to a hostile work environment based on her prior EEO activity in connection with the thirteen incidents identified above? Please explain.

Answer: There has been no intent by me or any other management official, to my knowledge, to subject the complainant to a hostile work environment.

32. Did you ever make any derogatory comments to the complainant based on her prior EEO activity? If so, please identify what you said and when you said it.

Answer: No.

33. Did the complainant ever complain to you or anyone else that she felt she was being subjected to a hostile work environment? If so, when did she complain and what did she say? Did you or anyone else provide any response? What was the response and when was it provided?

Answer: I have received many, many emails from the complainant. Most of the emails I cannot print, copy, reply or forward. These emails have covered the gambit of hostile work environment, harassment, not being able to come to work, reasons for tardiness, complaints about her staff, the EEO Manager, her first and second line supervisor, the Acute Psychiatric Inpatient Physician, the Chief of Staff, etc.

34. Is there anything else you wish to add related to the thirteen incidents accepted for investigation that you think might be relevant to the complainant's claim of hostile work environment or discrimination?

Answer: I do not believe the complainant has been subjected to a hostile work environment or discrimination. However, as previously stated the Medical Center has attempted to mediate and work with Ms. Leligdon to no avail. In November, 2013 an external Administrative Board of Investigation was chartered; however, to date, Ms. Leligdon and her attorney have not been willing to participate.

I have read the above statement, consisting of __10__ pages, including the signature page, and I declare under penalty of perjury that it is true and complete to the best of my knowledge and belief. I understand that the information I have given is not to be considered confidential, and that it may be shown to the interested parties.

_____     _1/23/14_
Susan Fuehrer, Affiant                                              Date

Case 200H-V110-2013103868
Paula Leligdon, Complainant                              Susan Fuehrer, Affiant

Page 10                                                                                (initials)

Tab B-4 p. 290
00330
LELIGDON-000330