UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| PAULA M. LELIGDON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ROBERT A. MCDONALD, | ) | |
| SECRETARY, | ) | Case No. 1:14-cv-02810 |
| | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF VETERANS' AFFAIRS | ) | |
| Louis Stokes Cleveland VA Medical Center | ) | JUDGE DONALD C. NUGENT |
| 10701 East Boulevard, | ) | |
| Cleveland, Ohio 44106 | ) | |
| | ) | |
| Defendant. | ) | |

DECLARATION OF PAUL DEPOMPEI
PURSUANT TO 28 U.S.C. § 1746

I, Paul DePompei, make the following declaration in lieu of an affidavit, as permitted by 28 U.S.C. § 1746:

1. I occupy the position of Risk Management Coordinator, Cleveland Department of Veterans Affairs Medical Center (VAMC). I have been so employed since 2008.

2. On November 25, 2013, Susan Fuehrer, Director of the Cleveland VAMC, convened an Administrative Review Board (AIB) to investigate allegations that Cleveland VAMC staff engaged in hostile, retaliatory, and inappropriate management behaviors towards Ms. Paula Leligdon. The AIB was reconvened on January 13, 2014, due to scheduling difficulties with Ms. Leligdon's attorney and the AIB members. A true and accurate copy of the documents convening the AIB are attached hereto as Exhibit F1.

3. The members of the AIB were Rolanda Watkins and Tamara Grimm, who were not employed at the Cleveland VAMC at the time the AIB was conducted.

4. A report of the AIB's findings was submitted to Director Fuehrer, through the Office of Risk Management, on April 23, 2014. A true and accurate copy of the AIB report, excluding exhibits, is attached hereto as Exhibit F2.



GOVERNMENT
EXHIBIT
F

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 24th day of June, 2016.

Paul DePompei RN, MSN
Facility Risk Manager
Louis Stokes Cleveland VA Medical Center

# Department of
# Veterans Affairs

# **Memorandum**

**Date:** November 25, 2013

**From:** **Medical Center Director, 00(W)**

**Subj:** Administrative Investigation Board (AIB) into allegations of a hostile work environment, retaliatory actions, and inappropriate behavior towards VAMC employee, Paula Leligdon, LISW.

**To:** **Risk Management Coordinator, 00M(W)**

1.   Please convene an AIB regarding allegations that the Cleveland VAMC staff engaged in hostile, retaliatory, and inappropriate management behaviors towards Ms. Paula Leligdon, LISW.

2.   The specific scope of the investigation is to include:

   A.   Fully investigate and review Ms. Leligdon's allegations that Joe Aquilina, Chief, Social Work Service, and Felix Esmurdoc, Assistant Chief, Social Work Service engaged in hostile and retaliatory behaviors towards Ms. Leligdon. Behaviors to be investigated should include, but are not limited to: allegations that Ms. Leligdon was removed from several facility committees, documented counseling regarding Ms. Leligdon's time and attendance, as well as interactions by Social Work Service's Chief and Assistant Chief with Ms. Leligdon's subordinate staff, which have all been used in a hostile and retaliatory nature.

   B.   Fully investigate and review Ms. Leligdon's allegation that Ms. Andrea Freeman, Facility EEO Manager was hostile and inappropriate in denying Ms. Leligdon's official time off to prepare for EEO meetings.

   C.   Fully investigate and review the timeline of events and accusations to determine if the Cleveland VAMC responded properly and timely to Ms. Leligdon's complaints.

*Susp an M Fueh*
Susan M. Fuehrer
Medical Center Director

VA FORM
MAR 1989   **2105**



GOVERNMENT
EXHIBIT
F-1

Tab C-6   LELIGDON-000594

## Department of Veterans Affairs

# Memorandum

**Date:** November 25, 2013

**From:** **Medical Center Director, 001(W)**

**Subj:** Administrative Investigation Board (AIB) into allegations of a hostile work environment, retaliatory actions, and inappropriate behavior towards VAMC employee, Paula Leligdon, LISW.

**To:**  **Rolanda Watkins**          **Chief, HRMS**          **Chair**          **Dayton VAMC**
       **Tamara Grimm**            **Program Manager**     **Member**       **VISN10**

1.  Please convene an (AIB) regarding allegations that the Cleveland Veterans Affairs Medical Center's (VAMC) Social Work Service Chief, Joseph Aquilina, and Assistant Chief, Felix Esmurdoc created a hostile work environment and willfully committed retaliatory actions against Social Work Service employee, Paula Leligdon, LISW. Additionally, investigate Ms. Leligdon's allegation that the Medical Center failed to stop this alleged behavior related to allegations that the Social Work Service Chief, Assistant Chief, and Equal Employment Opportunity (EEO) Manager, Andrea Freeman created a hostile work environment, and willfully committed retaliatory actions against Social Work service employee, Paula Leligdon. Also, investigate Ms. Leligdon's allegation that the facility EEO manager was hostile and inappropriate in denying Ms. Leligdon's official time off to prepare for EEO meetings. The basis of this investigation should be Report of Contacts written by the Medical Center and EEO's file.

2.  This memorandum authorizes you to inquire into all aspects of this matter; to require VA employees to cooperate with you; to require all employees having knowledge of the complaint to furnish testimony under oath or affirmation without pledge of confidentiality; to obtain voluntary sworn testimony from other individuals; to administer oaths and affirmations; and to gather other evidence  that you determine is necessary and relevant. These authorities are delegated for the purposes and duration of this investigation only. Your investigation shall be conducted and reported in accordance with VA Directive 0700 and VA Handbook 0700 (Administrative  Investigations) and MCP 000-010.

3.  Preparations for the investigations should begin immediately. You shall submit your completed report and investigative file to me within 45 days of this memorandum's date, unless an extension is granted via the Risk Management coordinator.

4.  Risk Management will provide all administrative support. Scheduling of conference rooms, court reporters, as well as memo preparation should be coordinated with Risk Management.

5.  This investigation is established under the provisions of Department of Veterans Affairs regulations  MP -1, Part I, Chapter 2, VA  Investigative Policy, VHA Supplement M-2, Part I, Chapter 35, changes 1 and VHA directive 10-92-070. Your report (may/shall be submitted in standard/summary format, as described in Chapter 6 of VA Handbook 0700 and MCP 000-010. Your report shall specifically include finding of fact or conclusions regarding the issue; you may/ shall make any appropriate recommendations.

1



Tab C-6  p. 555

LELIGDON-000595

Administrative Investigation Board (AIB) into allegations of a hostile work environment, retaliatory actions, and inappropriate behavior towards VAMC employee, Paula Leligdon, LISW.

If you have any questions or concerns, please feel free to contact Mr. Paul DePompei RN, MSN –Risk Manager at 1-216-791-3800 #4942

Susan M. Fuehrer
Medical Center Director

VA FORM
MAR 1989  **2105**

2

Tab  *C-6*  p. **556**

LELIGDON-000596

# Department of
# Veterans Affairs

# Memorandum

**Date:** December 13, 20013

**From:** Risk Manager, 00M(W)

**Subj:** Ms. Leligdon's Administrative Investigation Board (AIB)

**To:** Medical Center Director 001 (W)

1. The external AIB had arrangements to come to the Cleveland Veterans' Affairs Medical Center (VAMC) beginning December 16, 2013. They had planned on interviewing Ms. Leligdon on Tuesday, December 17, 2013. Ms. Leligdon was notified of her deposition on December 11, 2013. Unfortunately, her attorney was not available until December 26, 2013. The board members will not be able to travel to Cleveland that week or the following due to the holidays and other commitments at the duty station. We have agreed that the team will travel to Cleveland on Tuesday, January 21, 2014. Interviews will begin, Wednesday, January 22, 2014.

2. Risk Management is requesting approval to suspend the AIB until that time. If additional information is needed, please contact Paul Depompei, at extension 4942.

APPROVED/DISAPPROVED

Susan M. Fuehrer
Medical Center Director

VA FORM
MAR 1989  **2105**

Tab  C-6  LELIGDON-000597

00597

# Department of
# Veterans Affairs

# Memorandum

**Date:**  January 13, 2014

**From:**  Medical Center Director

**Subj:**  Ms. Leligdon's Administrative Investigation Board (AIB)

**To:**  Risk Manager, 00M(W)

1. Please reconvene the Administrative Investigation Board (AIB) into allegations that the
   Cleveland Veterans Affairs Medical Center's (VAMC) Social Work Service Chief, Joseph
   Aquilina, and Assistant Chief, Felix Esmurdoc created a hostile work environment and
   willfully committed retaliatory actions against Social Work Service employee, Paula
   Leligdon, LISW. Additionally, investigate Ms. Leligdon's allegation that the Medical
   Center failed to stop this alleged behavior related to allegations that the Social Work
   Service, Chief, Assistant Chief, and Equal Employment Opportunity (EEO) Manager,
   Andrea Freeman created a hostile work environment, and willfully committed retaliatory
   actions against Social Work service employee, Paula Leligdon. Also, investigate Ms.
   Leligdon's allegation that the facility EEO manager was hostile and inappropriate in
   denying Ms. Leligdon's official time off to prepare for EEO meetings.

Susan M. Fuehrer
Medical Center Director

VA FORM
MAR 1989  **2105**

Tab  C-6  558

00598  LELIGDON-000598

# Department of Veterans Affairs

# Memorandum

**Date:** January 13, 2014

**From:** Medical Center Director, 00(W)

**Subj:** Administrative Investigation Board (AIB) into allegations of a hostile work environment, retaliatory actions, and inappropriate behavior towards VAMC employee, Paula Leligdon, LISW.

**To:** Risk Management Coordinator, 00M(W)

1.  Please convene an AIB regarding allegations that the Cleveland VAMC staff engaged in hostile, retaliatory, and inappropriate management behaviors towards Ms. Paula Leligdon, LISW.

2.  The specific scope of the investigation is to include:

   A.  Fully investigate and review Ms. Leligdon's allegations that Joe Aquilina, Chief, Social Work Service, and Felix Esmurdoc, Assistant Chief, Social Work Service engaged in hostile and retaliatory behaviors towards Ms. Leligdon. Behaviors to be investigated should include, but are not limited to: allegations that Ms. Leligdon was removed from several facility committees, documented counseling regarding Ms. Leligdon's time and attendance, as well as interactions by Social Work Service's Chief and Assistant Chief with Ms. Leligdon's subordinate staff, which have all been used in a hostile and retaliatory nature. Please include all issues brought to the attention of Medical Center leadership through the date of this memorandum.

   B.  Fully investigate and review Ms. Leligdon's allegation that Ms. Andrea Freeman, Facility EEO Manager was hostile and inappropriate in denying Ms. Leligdon's official time off to prepare for EEO meetings.

   C.  Fully investigate and review the timeline of events and accusations to determine if the Cleveland VAMC responded properly and timely to Ms. Leligdon's complaints.

Susan M. Fuehrer
Medical Center Director

VA FORM
MAR 1989  **2105**

Tab C-6  LELIGDON-000599  00599  LELIGDON-000599

# Department of
# Veterans Affairs

# **Memorandum**

**Date:** April 23, 2014

**From:** Chair, Administrative Investigation Board #246

**Subj:** Administration Investigation Board (AIB) into allegations that Cleveland VAMC staff engaged in hostile, retaliatory, and inappropriate management behaviors towards Ms. Paula Leligdon, LISW.

**To:** Medical Center Director 001(W)
**Thru:** Risk Management Coordinator 00M(W)

1. <u>**AUTHORITY:**</u> This investigation was authorized by the Medical Center Director, Louis Stokes Cleveland Veterans Affairs Medical Center (VAMC), per memorandum from the Director dated, January 13, 2014.

2. <u>**PURPOSE:**</u> Convene an AIB into allegations made by Louis Stokes Cleveland Veterans Affairs Medical Center (LSCVAMC) employee, Ms. Paula Leligdon, LISW against Social Work Service leadership, Chief, Assistant Chief and Equal Employment Opportunity (EEO) Manager.

3. <u>**SCOPE:**</u> The specific scope of the investigation was limited to the allegations submitted by Paula Leligdon, specifically:

   A. Investigate and review Ms. Leligdon's allegations that Cleveland Veterans Affairs Medical Center's (VAMC) Social Work Service Chief, Joseph Aquilina, and Assistant Chief, Felix Esmurdoc created a hostile work environment and willfully committed retaliatory actions against Social Work Service employee, Paula Leligdon, LISW.

   B. Investigate Ms. Leligdon's allegation that the Medical Center failed to stop this alleged behavior related to allegations that the Social Work Service Chief, Assistant Chief, and Equal Employment Opportunity (EEO) Manager, Andrea Freeman created a hostile work environment, and willfully committed retaliatory actions against Social Work service employee, Paula Leligdon.

   C. Investigate Ms. Leligdon's allegation that the facility EEO manager was hostile and inappropriate in denying Ms. Leligdon's official time off to prepare for EEO meetings. The basis of this investigation should be Report of Contacts written by the Medical Center and EEO's file.



GOVERNMENT
EXHIBIT
F - 2

1

4. **FINDINGS OF FACT**:

**A. Testimony of Paula Leligdon on January 29, 2014 & February 28, 2014:**

- Ms. Leligdon has been employed by Louis Stokes Cleveland VAMC since 2004 as a social worker for Psychiatry Service. Ms. Leligdon became a supervisor for Psychiatry Service (inpatient and outpatient) in 2009 and currently holds this position. (exhibits A:6, C, D)
- Ms. Leligdon's position at the Cleveland VAMC is supervised by the Assistant Chief of Social Work Service, who is currently Felix C. Esmurdoc. (exhibits A:4, U:4)
- Ms. Leligdon applied for the Cleveland VAMC Assistant Chief of Social Work position in 2012 and was not selected for the job. The candidate selected for the job was Felix C. Esmurdoc.
- Ms. Leligdon filed three EEO claims. The first was in May of 2011 (age), second was June 2012 (age, reprisal) and third was August 2013 (harassment, hostile work environment, reprisal). (exhibits A:102, G)
- Since Ms. Leligdon assumed her supervisory social worker position, she has been supervised by two individuals who occupied the Assistant Chief of Social Work Service position – Dale Goldstein (2009-June 30, 2012) and Felix Esmurdoc (July 1, 2012-current). (exhibits A:4, 8, 15)
- Ms. Leligdon participated on the Psychiatry Grand Rounds Committee from 2005-June 2012. She was notified of her removal from the Psychiatry Grand Rounds committee due to the chair's decision to restructure the committee. No other member of the committee was removed. (exhibits A:25-26, LL:4, NN)
- Ms. Leligdon participated on the Mental Health Monitor workgroup from 2009, when it was initiated until the workgroup disbanded in 2011. The workgroup was initiated to follow through on how to improve the 7 day post-discharge follow-up performance measure. Following the Brecksville transition to Wade Park in 2011, another group was convened to look at performance related to follow up after discharge from the hospital. This group did not include Paula Leligdon. (exhibits A:26, 27, OO:5, 16)
- Ms. Leligdon participated on the Cleveland VAMC's Ethics Committee and is currently still a member. Ms. Leligdon also served as co-chair of the Ethics Committee's workgroup on the mental health advance directive. This workgroup was dissolved and neither Ms. Leligdon nor the other co-chair of the workgroup was involved with the decision to dissolve the workgroup. (exhibits A:47-52, B:6, YY:10)
- Ms. Leligdon served on the Social Work Professional Standards Board from 2011-2013, which was one full term. Ms. Leligdon requested that her term on the board be renewed and this request was denied by her supervisor, Felix C. Esmurdoc, who cited her attendance during the second year of her term as the rationale for his decision. (exhibits A:35, 42-43, U:15, HH)

2

LELIGDON-001493

- Ms. Leligdon's annual performance ratings for FY10-FY12 were: "Outstanding" for FY10, "Outstanding" for FY11 and "Fully Successful" for FY12. The "Outstanding" ratings were given by Dale Goldstein and the "Fully Successful" rating was given by Dale Goldstein as a summary rating in June 2012 due to his retirement. Her overall annual rating for FY12 was "Fully Successful" and given by Felix Esmurdoc in October 2012. (exhibits W, X, Y)

- On June 3, 2013, Paula Leligdon met with her supervisor, Assistant Chief of Social Work Service, Felix C. Esmurdoc and the Chief of Social Work, Joseph Aquilina. They presented her with four reports of contact. The reports of contact were submitted by Susan Lipkin (May 10, 2013), Ronald Copen (May 21, 2013), Joseph Aquilina on behalf of George Kasidonis (May 24, 2013) and Dr. David Blank (May 21, 2013). These reports of contact became grounds for the initiation of an internal EEO/fact finding investigation regarding whether Ms. Leligdon created a hostile work environment for her employees. (exhibits A:64, DD, WW, BBB, S, T)

- The Cleveland VAMC EEO /fact finding investigation regarding hostile work environment allegations regarding Paula Leligdon concluded that, "no information was obtained that suggested Ms. Leligdon was discriminatory in her actions or based any supervisory actions on race, color, religion, sex, national origin, age, disability, reprisal, or genetic information," the case was subsequently closed. (exhibit F)

- In July 2013, Paula Leligdon received a memorandum from her supervisor, Felix C. Esmurdoc, entitled, "Notification of unacceptable conduct/opportunity to improve." This memorandum cited lack of respect, argumentative approach, lack of cooperation, lack of flexibility, avoidance of meetings with supervisor. This memorandum was a letter of counseling and not a form of disciplinary action. (exhibit FF)

- At that same meeting in July 2013, Ms. Leligdon was also issued a memorandum regarding "Reminder of Policy on requesting leave Medical Center Policy (MCP) 005-007." The memorandum states that all requests for annual leave should be made in advance except in unusual situations and that Ms. Leligdon should submit such requests at least 72 hours in advance except for emergencies. These requests should be verbally approved by either Felix C. Esmurdoc or Joseph Aquilina prior to Ms. Leligdon considering the leave approved.  The memorandum cites facility policy, Medical Center Policy (MCP) 005-007. (exhibit GG)

- On October 23, 2013, Ms. Leligdon was issued another memorandum entitled, "Notification of violation of leave policy and opportunity to improve." This memorandum was a letter of counseling and was not a form of disciplinary action. This memorandum that Ms. Leligdon violated the leave policy and was being charged absent without leave (AWOL) for two separate instances where she utilized annual leave without requesting it in advance. The circumstances where Ms. Leligdon requested leave involved tardiness (15 minutes) and utilization of annual leave in lieu of sick leave (2 hours). (exhibit JJ)

3

- Paula Leligdon requested official time to prepare for an internal fact finding investigation. Ms. Leligdon's supervisor, Felix C. Esmurdoc, contacted Andrea Freeman for consultation and was advised that official time should not be granted for internal fact finding investigations. Thus, Ms. Leligdon's request for official time was denied. (exhibits U:45, O:17, P, Q)
- A memorandum was issued to Paula Leligdon, dated January 2, 2014, from the facility Chief of Staff, entitled, "Letter of Expectations." This memorandum did not represent formal discipline or even informal counseling. The memo outlines the Chief of Staff's expectations of supervisors, including expectations around meeting with their supervisors, not copying attorneys on emails related to work only, and to cover clinic time for an employee on leave. (exhibit E)
- Ms. Leligdon's supervisor, Felix C. Esmurdoc encouraged, but did not force, Ms. Leligdon to increase her clinical time. (exhibits A:102-103, U:31, DD)
- Ms. Leligdon reported during her interview that there were rumors/gossip about her going around the Cleveland VAMC, but did not share specific contents with this Board, stating, "I cannot share any elements of rumors – about the rumors or the details." (exhibit A:101)

**B. Testimony of Susan Fuehrer, taken on January 29, 2014:**

- Ms. Fuehrer is the Director of the Cleveland VAMC and has held this position for the past three and a half years. (exhibit L:3, Line 19-24)
- Ms. Fuehrer received a request from Ms. Leligdon for a copy of the EEO fact finding report and complete file related to the facility's investigation of whether Ms. Leligdon created a hostile work environment for her employees. Ms. Fuehrer advised Ms. Leligdon to request a complete copy of the file through the Freedom of Information Act. (exhibits L:8, Line 16-25 & L:9, Line 1-8, A:80)
- Ms. Leligdon used a significant amount of official time for EEO claims. (exhibits EEE, O:4-5, DDD: 4-5)
- Ms. Leligdon sent or copied Ms. Fuehrer to numerous email messages regarding various topics related to Ms. Leligdon's allegations. (exhibits A:83, M, O:11&15, DD, EE, HH)
- Ms. Fuehrer appointed an Administrative Investigation Board to look into Ms. Leligdon's allegations of a hostile work environment. (exhibit FFF)
- Ms. Fuehrer denied awareness of any rumors about Ms. Leligdon. (exhibit L:17)

**C. Testimony of Joseph Aquilina, taken on January 30, 2014:**

- Joseph Aquilina is employed with the Louis Stokes Cleveland VAMC. (exhibit R:3, Line 21-24)
- Mr. Aquilina holds the position as Chief, Social Work Service and has worked at the Cleveland VA for twenty-seven years. (exhibit R:3, Line 21-24)

4

- Mr. Aquilina began to know Ms. Leligdon once she joined the medical center in 2004 as a clinical social worker. (exhibits R:4, Line 3-8, A:6)
- Mr. Aquilina was the selecting official for the Assistant Chief, Social Work position. (exhibit R:8, Line 4-6)
- Mr. Aquilina selected Mr. Felix C. Esmurdoc to this position. (exhibit R:8, Line7-9)
- Ms. Leligdon is still a current member of the Ethics Committee. (exhibits R:17, Line 25 & R:18, Line 1, B:6)
- Mr. Aquilina does not serve on the Psychiatry Grand Rounds Committee and has no authority to appoint or remove members. (exhibit R:19, Line 1-11, LL:4)
- Mr. Aquilina received a complaint from Dr. David Blank, Psychiatrist about Ms. Leligdon showing up unannounced to the Parma Community Based Outpatient Clinic (CBOC). (exhibits R:19, Line 19-23, S)
- Mr. Aquilina was present during the meeting where Ms. Leligdon was issued four reports of contact. (exhibits R:23, Line16-25, A:64)
- Mr. Aquilina met with Mr. Ronald Copen regarding his concerns with Ms. Leligdon's management style. (exhibit R:21, Line 23-25 & R:22, Line1-2, AAA:12)
- Mr. Aquilina relayed the results of the EEO fact finding investigation to Ms. Leligdon. (exhibits R:24, Line 7-12, A:71)
- Mr. Aquilina does not recall hearing any rumors or gossip about Ms. Leligdon. (exhibit R:27, Line 20-25)
- Mr. Aquilina did not coerce any of Paula Leligdon's employees into filing reports of contacts (ROC) against her. (exhibits R:22-23, AAA:10, VV, TT:10)
- Mr. Aquilina wrote up two reports of contact based on complaints that were received by him from Dr. David Blank and Mr. George Kasidonis. (exhibits S, T)

**D. Testimony of Felix C. Esmurdoc, taken on January 30 & February 14, 2014:**

- Felix C. Esmurdoc is currently Paula Leligdon's supervisor and has been since July 1, 2012. (exhibits A:15, U:3)
- Felix. C. Esmurdoc is currently the chair of the Social Work Professional Standards Board. (exhibit U:15, HH)
- Felix C. Esmurdoc made the decision to not recommend renewal of Paula Leligdon's term on the Social Work Professional Standards Board. He cited her poor attendance as the reason for the denial. (exhibits A:42-43, U:15)
- Felix C. Esmurdoc communicated to Paula Leligdon that he was concerned about her low leave balance. (exhibits A:39, B:19, U:36)
- Felix C. Esmurdoc issued Paula Leligdon two separate memos about her leave use. The first memo was issued in July 2013 and was titled, "Reminder of policy on requesting leave, MCP 005-007" (exhibit GG) and highlighted that Paula should make requests for annual leave at least 72 hours in advance except for emergencies and that she obtain approval from her supervisor or Chief of Social Work Service before the annual leave will be considered officially approved. The second memo issued to Paula Leligdon was

5

titled, "Notification of violation of leave policy and opportunity to improve" (exhibit JJ) and charged Paula with AWOL for two instances where annual leave (AL) was not requested in advance. Neither memo was presented as a formal disciplinary action. Both memos cited, MCP 005-007. (exhibit KK)

- Felix C. Esmurdoc accused Paula Leligdon of insubordination. (exhibits A:64, 66, B:13-14, CC, FF)
- Felix C. Esmurdoc denied hearing any rumors or gossip about Paula Leligdon. (exhibit U:13)
- Felix C. Esmurdoc did not coerce any of Paula Leligdon's employees into filing reports of contact (ROC) against her. (exhibits V:8, VV, TT:9-10, AAA:11)

### E. Testimony of Andrea Freeman, taken on January 30, 2014:

- Andrea Freeman is currently employed with the Cleveland VAMC and holds the position as Equal Employment Officer (EEO) Affirmative Employment Manager. (Exhibit O:3, Line11-20)
- As EEO manager Ms. Freeman serves as the liaison to the Office of Resolution Management (ORM), prevention of sexual harassment, mediation, reasonable accommodation, diversity management, limited English proficiency and other duties as assigned.  (exhibit O:3, Line11-20)
- Ms. Freeman supervises two employees, Ms. Sonya Hall and Mr. Bruce Kafer. (exhibit O:3, Line 23-24)
- Ms. Freeman's current supervisor is Susan Fuehrer, Medical Center Director at the Cleveland VAMC. (exhibit O:4, Line 2-3)
- Mr. Felix C. Esmurdoc, Assistant Chief of Social Work Service consulted with Ms. Freeman for guidance on EEO official time. (exhibits O:4, Line 14-16, A:82, R:45)
- The general rule for granting official time is up to eight (8) hours for each claim. (exhibits O:5, Line 4-7, DDD:5)
- Ms. Leligdon filed three EEO claims. (exhibits O:7, Line 7, G, A:102)
- Ms. Freeman delegated Bruce Kafer to conduct the EEO fact-finding investigation, which is an informal investigation, looking into allegations made by some of Paula Leligdon's employees. (exhibits O:10, Line 21-25, F)

### F. Testimony of Lisa Myles, taken on January 30, 2014:

- Lisa Myles is an Employee and Labor Relations Specialist with the Louis Stokes Cleveland VAMC. (exhibit PP:3, Line 10-13)
- Ms. Myles has held this position since March 2013. (exhibit PP:3, Line 10-13)
- Ms. Myles received an e-mail message from Felix C. Esmurdoc requesting guidance and advisement on how to handle complaints from Ms. Leligdon's staff of being subjected to a hostile work environment. (exhibits PP:4, Line 8-16, CC)

6

- Ms. Myles often provided guidance and advisement to Mr. Esmurdoc on Human Resource (HR) related issues, specifically on the proper procedures for a valid sick leave request. (exhibits PP: 6, Line 16-25 & 7, Line 1-5, EE)
- Ms. Myles denied hearing any rumors or gossip about Ms. Leligdon. (exhibit PP:12, Line 4-9)
- Ms. Myles reported that she has not received any reports of contact regarding the patient complaint involving John McKinney. (exhibits PP:14, A:99)

### G. Testimony of Dr. David Blank, taken on February 13, 2014 and March 5, 2014:

- Dr. Blank is employed at the Louis Stokes Cleveland VAMC and holds the position as Assistant Chief of Psychiatry Service. (exhibit LL:3, Line 10-11)
- As the Assistant Chief of Psychiatry Service, Dr. Blank manages the academic affairs program, manages the mental health CBOC in Parma, Ohio, and manages the outpatient mental health team at wade Park, serves as the Psychiatry Residency Director, and serves as Chair for the Psychiatry Grand Rounds Committee. (exhibit LL:3, Line 14-22)
- Dr. Blank made the decision to transition Ms. Leligdon from the Psychiatry Grand Rounds Committee in 2012. (exhibits LL:4, Line 1-2, A:25)
- No one else was transitioned from the Psychiatry Grand Rounds Committee. (exhibits LL:4, Line 12-15, A:26)
- Ms. Leligdon inquired with Dr. Blank of the reason she was transitioned from the Psychiatry Grand Rounds Committee.  (exhibits LL:9, Line 1-5, A:25)
- Mr. Aquilina did not coerce or persuade Dr. Blank to transition Ms. Leligdon from the Psychiatry Grand Rounds Committee. (exhibits MM:8, Line 23-25 and 9:1, R:19)
- Mr. Esmurdoc did not coerce or persuade Dr. Blank to transition Ms. Leligdon from the Psychiatry Grand Rounds Committee. (exhibits MM:9, Line 2-5, V:6)

### H. Testimony of Dr. Linda Bond, taken on February 13, 2014:

- Dr. Linda Bond is a psychiatrist at the Cleveland VAMC and is also the medical manager of the inpatient psychiatry service. (exhibit OO:3)
- Paula Leligdon supervises the social workers that work in the inpatient psychiatry unit. (exhibits D, OO:4)
- Dr. Linda Bond participated on the Mental Health Monitor workgroup with Paula Leligdon when they both worked at the Brecksville location. (exhibits OO:5, A:31)
- There was no official announcement about the Mental Health Monitor workgroup being disbanded (exhibits OO:6, A:29)
- Sometime after the staff from Brecksville transferred to Wade Park (June 2011), Dr. Linda Bond was called upon to participate in a group that focused on how to improve performance related to post-discharge follow-up. Dr. Bond told Ms. Leligdon that the social workers were being represented by Mr. Aquilina. (exhibits OO:14-16, A:29)
- John McKinney is a social worker, supervised by Ms. Leligdon, who is assigned to Dr. Bond's team in inpatient psychiatry. (exhibits OO:19, A:89)

7

LELIGDON-001498

**I.  Testimony of John McKinney, taken on February 13, 2014:**

- John McKinney is a social worker on the inpatient psychiatry unit of the Cleveland VAMC. He works on Dr. Linda Bond's team, but is supervised by Paula Leligdon. (exhibit A:89)
- John McKinney was contacted as part of the facility fact finding investigation about Paula Leligdon. In a June 17, 2013 e-mail to Bruce Kafer, Mr. McKinney says, "I personally have no complaints whatsoever about Ms. Leligdon…" Then, on October 16, 2013, after the fact finding investigation had included, Mr. McKinney e-mailed Bruce Kafer again stating, "I was afraid to document for you her ongoing bullying of me and other social workers, and her ongoing, highly inappropriate abuse of her role as my supervisor to harass me and others." (exhibit RR)
- A patient's family member complained about John McKinney during the summer of 2013, indicating that he was rude when working with them. Paula Leligdon is currently still investigating this complaint. (exhibits A:99-100, QQ:33-34)
- When asked whether or not he had heard any rumors about Paula Leligdon, John McKinney replied, "No, not really." (exhibit QQ:39).

**J.  Testimony of Susan Lipkin, taken on February 14, 2014:**

- Paula Leligdon is Susan Lipkin's direct supervisor and has been since Ms. Lipkin started in her position approximately five years ago. (exhibit TT)
- On May 8, 2013, Susan Lipkin contacted Felix C. Esmurdoc (via e-mail) of her own accord due to her concerns about her supervisor, Paula Leligdon. (exhibits R:23, V:8, VV, TT:9-10)
- After meeting with Susan Lipkin to discuss her concerns about Paula Leligdon, Mr. Esmurdoc told Ms. Lipkin that she could document her complaints about Ms. Leligdon, via a report of contact. (exhibits V:8, WW)
- On May 10, 2013, Susan Lipkin submitted a report of contact regarding Paula Leligdon to Mr. Esmurdoc. The report of contact alleges that Paula Leligdon "demonstrated an ongoing pattern of hostility, intimidation, public humiliation, discrimination, arbitrary decision-making, demeaning interactions, and an unwillingness to work with me to cultivate a productive working supervisor/supervisee relationship." (exhibit WW)
- Ms. Lipkin's report of contact and personal testimony were used as evidence for a facility fact finding investigation about whether or not Paula Leligdon had created a hostile work environment for her employees. The outcome was that no information was obtained that suggested Paula Leligdon was discriminatory in her actions or based any supervisory actions on race, color, religion, sex, national origin, age, disability, reprisal, or genetic information. The case was closed and report was forwarded to the Chief of Social Work Service, Joseph Aquilina, who subsequently reported the outcome to Paula Leligdon (exhibits F, A:71)
- Susan Lipkin denied hearing rumors or negative comments about Ms. Leligdon. (exhibit TT:15)

8

**K. Testimony of Jason Gatliff, taken on February 14, 2014:**

- Jason Gatliff is employed at the Louis Stokes Cleveland VAMC as a Program Specialist. (exhibit YY:3, Line 11-15)
- Mr. Gatliff oversees the Integrated Ethics Committee. (exhibit YY:3, Line 11-15)
- Ms. Leligdon served on the committee and also served as the co-chair of the Psychiatric Advance Directive Subcommittee. (exhibit YY:3, Line 22-25, A:47 )
- The Integrated Ethics Committee is still in place. (exhibit YY:4, Line 6-7, B:6)
- A meeting was held with the hospital leadership level and it was at this meeting that it was decided that the subcommittee has gone as far as it was going to go. Mr. Esmurdoc was in attendance at this meeting in the absence of Mr. Aquilina. (exhibits YY:10, Line 3-12 & 16-22, A:50-51)
- Ms. Leligdon was never removed from the Integrated Ethics Committee and still serves on the committee today. (exhibits YY:3, Line 10-11, B:6)

**L. Testimony of Dale Goldstein, taken on February 14, 2014:**

- Dale Goldstein retired from the Cleveland VAMC in June 2012. He formerly held the position of Assistant Chief, Social Work Service. In this capacity, he directly supervised Paula Leligdon from the time she was hired as Supervisor, Psychiatry Service, until the time he retired. (exhibit XX:4)
- Dale Goldstein and Felix C. Esmurdoc did not discuss Dale's concerns about Paula Leligdon's performance during the transition. (exhibits XX:18-19, U:5)
- Dale reported that the change he witnessed in Paula's behavior ultimately led to the change in her performance evaluation score, from "outstanding" in FY10 and FY11, to "fully satisfactory" as her summary rating given upon his retirement in June 2012. (exhibits XX:17-18, W, X, Y)

**M. Testimony of Ronald Copen, taken on February 28, 2014:**

- Mr. Ronald Copen, LISW-S, works with the Louis Stokes Cleveland VAMC in the Housing and Urban Development-Veteran Affairs Supportive Housing (HUD-VASH) program in Akron, Ohio. (exhibit AAA:3, Line 13-15)
- Ms. Leligdon was Mr. Copen's direct supervisor when he worked for Psychiatry Service. (exhibit AAA:6, Line 1-2)
- Mr. Copen was presented with the option to complete a report of contact on Ms. Leligdon after lodging a complaint. (exhibits AAA:10, Line 23-25, BBB)
- Mr. Copen was not coerced to write a report of contact on Ms. Leligdon. (exhibits AAA:10, Line 23-25, BBB)
- On May 21, 2013, Ronald Copen submitted a report of contact regarding Paula Leligdon to Andrea Freeman. The report of contact alleges that Paula Leligdon, "has been exercising her authority as a supervisor to create an atmosphere of hostility, utilizing paranoia, intimidation, public embarrassment and criticism, to create and maintain this hostile work environment." (exhibit BBB)

9

LELIGDON-001500

**N. Testimony of Joseph Picklo, taken on February 28, 2014:**

- Joseph Picklo is the Privacy and Freedom of Information Act Officer for the Cleveland VAMC. (exhibit CCC:3)
- Mr. Picklo met with Ms. Leligdon approximately one year ago about her concerns regarding her personal privacy in relation to her EEO claim. (exhibits CCC:6, A:57)

**O. Testimony of Darlene Mathes, taken on March 18, 2014:**

- Darlene Mathes is the lead EEO Manager for VISN 10. (exhibit DDD:4)
- Ms. Leligdon contacted Ms. Mathes to discuss how she was denied official time to prepare for an EEO case. (exhibits A:84, DDD:4)
- Ms. Mathes advised Ms. Leligdon that if she had concerns about Andrea Freeman's conduct, that she seek mediation or take those concerns to Ms. Freeman's supervisor. (exhibits A:86, DDD:6)
- Ms. Mathes reported that it is normal practice for EEO Managers to advise supervisors on requests for official time. (exhibit DDD:7 &10)

5. **LIST OF EXHIBITS:**

A. Statement of Paula Leligdon (complainant), Supervisory Social Worker, Psychiatry Service, taken on 1/29/14.
B. Statement of Paula Leligdon, taken on 2/28/14.
C. Document, resume of Paula Leligdon, dated 5/18/12.
D. Document, Social Work Service Organization Chart (including breakdown of organizational unit for Paula Leligdon's unit), dated 8/1/13.
E. Document, memorandum from Cleveland VAMC Chief of Staff to Paula Leligdon on "Letter of Expectations," dated 1/2/14.
F. Document, Final Report: Hostile Work Environment Allegations Regarding Paula Leligdon, LISW-S, dated 9/4/13.
G. Document, list of Paula Leligdon's EEO complaint case numbers and complaint dates (4/28/11, 7/11/12, 7/18/13), dated 1/30/14.
H. Document, Equal Employment Opportunity Commission Cleveland Field Office, Agency's First Requests for Production of Documents to Complainant, Case #532-2013-00057X.
I. Document, Equal Employment Opportunity Commission Cleveland Field Office, Agency's First Set of Interrogatories to Complainant, Case #532-2013-00057X.
J. Document, Equal Employment Opportunity Commission Cleveland Field Office, Agency's Response to Complainant Paula Leligdon's First Set of Interrogatories, Case #532-2013-00057X.
K. Document, Paula Leligdon's letter to the Honorable Judge Debra L. Sharp, regarding withdrawal of request for hearing before EEOC Administrative Judge, without dismissal of discrimination complaint, dated 9/25/13.
L. Statement of Susan Fuehrer, VAMC Director, taken on 1/29/14.
M. Email from employee Paula Leligdon to Susan Fuehrer (cc: Joseph Aquilina, Felix C. Esmurdoc, Murray Altose, Paula Leligdon) regarding the Social Work Professional

10

Standards Review Board and how another member's (Debra Zeigler) term was renewed while Paula's was not, dated 9/24/13.

N. Document, from employee Paula Leligdon to Sue Fuehrer in regards to her response to Felix C. Esmurdoc's report of contact/counseling plan related to Ms. Leligdon's leave usage, dated 11/2/13.

O. Statement of Andrea Freeman, EEO Manager, taken on 1/30/14.

P. Email from Andrea Freeman to Felix C. Esmurdoc, regarding use of official time to prepare for the fact-finding investigation conducted by the facility EEO office, dated 8/13/13, 2:50PM.

Q. Emails between employee Andrea Freeman to Paula Leligdon regarding use of official time to prepare for the fact-finding investigation conducted by the facility EEO office, dated 8/13/13.

R. Statement of Joseph Aquilina, Chief Social Work Service, taken on 1/30/14.

S. Document, report of contact, by employee Joseph Aquilina (in regards to David Blank), dated 5/21/13.

T. Document, report of contact, by employee Joseph Aquilina (in regards to George Kasidonis), dated 5/24/13.

U. Statement of Felix (Chris) Esmurdoc, Assistant Chief Social Work Service, taken on 1/30/14.

V. Statement of Felix Chris Esmurdoc, Assistant Chief Social Work Service, taken on 2/14/14.

W. Document, Performance Plan and Appraisal of Paula Leligdon (including Paula's self-assessment), performance cycle 10/1/09-9/30/10.

X. Document, Performance Plan and Appraisal of Paula Leligdon (including Paula's self-assessment), performance cycle 10/1/10-9/30/11.

Y. Document, Performance Plan and Appraisal of Paula Leligdon (including Paula's self-assessment), performance cycle 10/1/11-9/30/12.

Z. Document, memo, 2011-2012 Performance Appraisal Rating Review, submitted to Joseph Aquilina and Felix C. Esmurdoc by Paula Leligdon, on 11/30/12.

AA. Document, memorandum, from Joseph Aquilina and Chris Esmurdoc to Paula Leligdon on "2011-2012 Performance Appraisal," dated 12/5/12.

BB. Email string between Felix C. Esmurdoc and Paula Leligdon regarding setting up a meeting, initiated by Mr. Esmurdoc on 5/17/13 (concludes with meeting confirmation by Paula Leligdon on 5/20/13 at 8:39AM).

CC. Email from employee Felix C. Esmurdoc to Lisa Myles and Paula Leligdon, regarding summarizing a meeting he had with Paula Leligdon, dated 5/20/13 (to Ms. Leligdon) and 5/21/13 (to Lisa Myles).

DD. Emails between Felix C. Esmurdoc and Paula Leligdon, summary of supervision meeting held on 6/3/13 about reports of contact received from or filed on behalf of Paula's subordinates, dated 6/4/13 and 6/7/13.

EE. Email from Felix C. Esmurdoc to Lisa Myles regarding his interactions with Paula Leligdon in regards to issuing her a memo of written counseling on her leave usage, dated 7/31/13.

FF. Document, memorandum from Chris Esmurdoc to Paula Leligdon on "Notification of unacceptable conduct/opportunity to improve," dated 7/31/13.

GG. Document, memorandum, from Chris Esmurdoc to Paula Leligdon on "Reminder of policy on requesting leave MCP 005-007," dated 7/31/13.

11

LELIGDON-001502

HH. Emails between Paula Leligdon and Felix C. Esmurdoc, regarding her continued term renewal for the Social Work Professional Standards Board, dated 7/17/13-9/24/13.

II. Email from Lisa Myles to Felix C. Esmurdoc, regarding advice on how to proceed with addressing Paula Leligdon's leave usage, dated 9/12/13.

JJ. Document, memorandum, from Chris Esmurdoc to Paula Leligdon on "Notification of violation of leave policy and opportunity to improve," dated 10/23/13.

KK. Document, Louis Stokes Cleveland Medical Center Policy 005-007 entitled, "Absence and Leave for General Schedule, Federal Wage System and Non-Appropriated Fund Employees" dated 3/21/11.

LL. Statement of David Blank, Assistant Chief Psychiatry Service, taken on 2/13/14.

MM. Statement of David Blank, taken on 3/5/14.

NN. Email from David Blank to Paula Leligdon, regarding her removal from the Psychiatry Grand Rounds Committee, dated 6/20/12.

OO. Statement of Linda Bond, Manager Inpatient Psychiatry Service, taken on 2/13/14.

PP. Statement of Lisa Myles, Employee Labor Relations Specialist, taken on 2/13/14.

QQ. Statement of John McKinney, Social Worker, Psychiatry Service, taken on 2/13/14.

RR. Emails from John McKinney to Bruce Kafer, in reference to his input on concerns or positive comments related to the facility fact finding investigation in regards to Paula Leglidon, dated 6/17/13 and 10/16/13.

SS. Emails between John McKinney and Andrea Freeman, regarding mediation between John McKinney and Paula Leligdon, dated 12/5/13-12/6/13.

TT. Statement of Susan Lipkin, Social Worker/Team Lead for Outpatient Mental Health, taken on 2/14/14.

UU. Document, Susan Lipkin's notes from meeting with supervisor, Paula Leligdon, dated November 2012.

VV. Email from Susan Lipkin to Felix C. Esmurdoc, requesting time to discuss "a few issues," dated 5/8/13.

WW. Document, report of contact, by employee Susan Lipkin, dated 5/10/13

XX. Statement of Dale Goldstein, Assistant Chief Social Work Service (retired), taken on 2/14/14.

YY. Statement of Jason Gatliff, Integrated Ethics Program Officer, taken on 2/14/14.

ZZ. Email from Paula Leligdon to Ethics Committee, indicates she is still on overall committee, dated 2/7/14.

AAA. Statement of Ronald Copen, Social Worker, HUD VASH, taken on 2/28/14.

BBB. Document, report of contact, by employee Ronald Copen, dated 5/21/13.

CCC. Statement of Joseph Picklo, Facility Privacy and Freedom of Information Act Officer, taken on 2/28/14.

DDD. Statement of Darlene Mathes, VISN 10 EEO Manager, taken on 3/19/14.

EEE. Paula Leglidon's leave records from January 2012 – December 2013.

FFF. AIB Appointment Letter.

12

6. **CONCLUSIONS:**

**Allegation #1:** This Administrative Investigation Board was called to investigate allegations that Cleveland VAMC Social Work Service Chief, Joseph Aquilina, created a hostile work environment and willfully committed retaliatory actions against social work employee, Paula Leligdon.

**Conclusions:** The board determines that there is insufficient evidence to substantiate that Chief Social Work Service, Joseph Aquilina, created a hostile work environment or willfully retaliated against Ms. Leligdon.

Over the course of this investigation, there were a number of issues that the Board examined in regards to Mr. Aquilina and his relationship with Paula Leligdon. These issues included the following:

1. **Whether Mr. Aquilina encouraged Ms. Leligdon's staff to write reports of contact and the fact that he wrote up reports of contact on Ms. Leligdon:** Mr. Aquilina indicated during his interview that his typical approach to managing complaints is to offer the complainant the opportunity to document those complaints. This Board found no evidence that Mr. Aqulina coerced Ms. Leligdon's employees into writing reports of contact about her. Ms. Leligdon's two employees that filed reports of contact indicated that they did so of their own accord. Mr. Aquilina also wrote reports of contact after speaking with George Kasidonis, who was Ms. Leglidon's employee at the Parma CBOC. Mr. Kasidonis contacted Mr. Aquilina to share his concerns with the way he felt he was being treated by Ms. Leligdon. Mr. Aquilina explained that he couldn't follow through on Mr. Kasidonis' concerns unless he had them in writing. Mr. Kasidonis didn't want to put his concerns in writing so Mr. Aquilina explained that he could write them for Mr. Kasidonis and Mr. Kasidonis indicated he would like Mr. Aquilina to do that. (Exhibit T, R:23) Additionally, Mr. Aquilina documented his telephone conversation received from Dr. Blank regarding concerns Dr. Blank had with Ms. Leglidon's practices at the Parma CBOC. Both reports of contact were authored by Mr. Aquilina. This Administrative Investigations Board found no evidence that Mr. Aquilina coerced Ms. Leglidon's staff into writing reports of contact on Ms. Leglidon and neither did we find Mr. Aquilina's decision to write reports of contacts of the information presented to him an unacceptable practice.

2. **Whether Mr. Aquilina's participation in the meetings where Ms. Leglidon was issued counseling plans and memos was inappropriate:** This Administrative Investigations Board did not corroborate evidence regarding whether Mr. Aquilina participated in meetings where Ms. Leglidon was issued counseling plans and memos. However, since Mr. Aquilina is Mr. Esmurdoc's direct supervisor and the Service Chief of the department, this Board found that his attendance is an acceptable practice.

3. **Whether Mr. Aquilina's behavior toward Ms. Leglidon was inappropriate when Mr. Aquilina gave Ms. Leligdon's her results to the EEO fact-finding investigation:**

13

This Board was unable to corroborate evidence regarding whether Mr. Aquilina was inappropriate when relaying the results to the EEO fact-finding report to Ms. Leglidon.

4. **Whether Mr. Aquilina suggested or recommended that Ms. Leligdon be removed from any committee or workgroup:** This Board found no evidence that indicated that Mr. Aquilina suggested or recommended that Ms. Leligdon be removed or excluded from the committees/workgroups she specifically mentioned during her interviews.

5. **Whether Mr. Aquilina engaged in or perpetuated rumors and/or gossip about Ms. Leligdon:** This Board was unable to corroborate evidence regarding whether Mr. Aquilina engaged in spreading rumors and/or gossip about Ms. Leligdon. Mr. Aquilina denied hearing any rumors about Ms. Leligdon.

**Allegation #2:** This Administrative Investigation Board was called to investigate allegations that Cleveland VAMC Assistant Social Work Service Chief, Felix C. Esmurdoc, created a hostile work environment and willfully committed retaliatory actions against social work employee, Paula Leligdon.

**Conclusions:** The board determines that there is insufficient evidence to substantiate that Assistant Social Work Service Chief, Felix C. Esmurdoc, created a hostile work environment or willfully retaliated against Ms. Leligdon.

Over the course of this investigation, there were a number of issues that the Board examined in regards to Felix C. Esmurdoc and his relationship with Paula Leligdon. These issues included the following:

1. **Ms. Leligdon's FY2012 performance rating:** Ms. Leligdon's FY12 performance rating was lower than the two years prior, though her FY12 "fully satisfactory" rating is still considered a favorable performance rating. The FY12 performance rating was given by her former supervisor, Dale Goldstein, as a summary rating prior to his retirement that took place in June 2012. Mr. Goldstein was able to clearly articulate the circumstances that led to his decision to downgrade Ms. Leligdon's performance rating in FY12 (Exhibit XX: 17-18). Then, Mr. Esmurdoc, with guidance from Human Resources, utilized Mr. Goldstein's summary rating as the rating of record, indicating that he had not observed anything about her performance since the summary rating period that would lead him to change Mr. Goldstein's rating (Exhibit U:6).

2. **Whether Mr. Esmurdoc coerced Ms. Leligdon's staff into writing reports of contact and how he followed these reports of contact through:** Mr. Esmurdoc indicated during his interview that his typical approach to managing complaints is to offer the complainant the opportunity to document those complaints (Exhibit V:8). This Board found no evidence that Mr. Esmurdoc coerced Ms. Leligdon's employees into writing reports of contact about her. Ms. Leligdon's two employees that filed reports of contact indicated that they did so of their own accord and not via a recommendation from Felix C. Esmurdoc (TT: 10, VV: 10-11, BBB). Mr. Esmurdoc also followed through with these reports of contact in a reasonable manner; that is, by first addressing them with his

14

employee (CC), by seeking advice from HR, and then by submitting them for further investigation once he determined there was a pattern (i.e. multiple complaints) involved.

3. **Mr. Esmurdoc's decision to recommend against Ms. Leligdon serving an additional term on the Social Work Professional Standards Board:** Mr. Esmurdoc was able to give clear and reasonable rationale for why he decided against recommending Ms. Leligdon to serve an additional term on the Social Work Professional Standards Board. He cited Ms. Leligdon's attendance at past Board meetings. Mr. Esmurdoc indicated that Ms. Leligdon missed 8 of the 18 regularly scheduled meetings and 1 of the 7 AD HOC meetings over the second year of her term on the board (Exhibit HH). Ms. Leligdon's documented response indicated that she missed 8 of the 15 scheduled meetings and did not remark on AD HOC meetings that occurred during the same timeframe (Exhibit M). This Administrative Investigations Board found that his rationale was clear and appropriate, given Ms. Leligdon's attendance record as cited by both Mr. Esmurdoc and Ms. Leligdon.

4. **Whether Mr. Esmurdoc suggested or recommended that Ms. Leligdon be removed from any committee or workgroup:** This Board found no evidence that indicated that Mr. Esmurdoc suggested or recommended that Ms. Leligdon be removed or excluded from the committees/workgroups she specifically mentioned during her interviews (Exhibit V). Mr. Esmurdoc did not recommend that Ms. Leligdon's term on the Social Work Professional Standards Board be renewed, as discussed above.

5. **Whether Mr. Esmurdoc was treating Ms. Leligdon unfairly in regards to her clinical time:** Mr. Esmurdoc indicated that Ms. Leligdon has less clinical time than the other individuals he supervises. He also indicated that it is standard practice for his supervisors to engage in clinical duties, in addition to their supervisory responsibilities. (Exhibit U:28-31). Mr. Aquilina reported to the Board that, "All of our supervisors are direct service providers as well as being supervisors; they all have some clinical time some more than others." (exhibit R:29) Finally, this Board understands that to date, Ms. Leligdon's clinic time has not been increased. (exhibit A:103) She continues to maintain the half day clinic that she requested when she started in her position as a supervisory social worker.

6. **Whether Mr. Esmurdoc misapplied the facility leave policy in regards to Ms. Leligdon:** Mr. Esmurdoc utilized guidance from human resources and cited the facility leave policy in order to develop the two memos he wrote to Ms. Leligdon in regards to her leave. The fact that neither memo was disciplinary or permanent in nature suggests that Mr. Esmurdoc is attempting to correct Ms. Leligdon's conduct without having it reflect on her official record. After Mr. Esmurdoc issued the first memo regarding her leave; however, he also did not follow through with immediately pointing out that her behavior around tardiness was not acceptable. This could potentially be confusing for an employee; however, Mr. Esmurdoc attempted to elaborate on his expectations surrounding leave with Ms. Leligdon and she refused to participate in the discussion (Exhibit EE).

7. **Whether Mr. Esmurdoc engaged in or perpetuated rumors and/or gossip about Ms. Leligdon:** This Board was unable to corroborate evidence regarding whether Mr.

15

LELIGDON-001506

Esmurdoc engaged in spreading rumors and/or gossip about Ms. Leligdon. Mr. Esmurdoc denied hearing any rumors about Ms. Leligdon (Exhibit U: 13).

8. **Whether Mr. Esmurdoc inappropriately assessed Ms. Leligdon's behavior as insubordinate:** Ms. Leligdon refused to meet with her supervisor, accept constructive feedback from her supervisor and failed to work collaboratively with her supervisor on a number of occasions as evidenced in Exhibits: CC, FF, R:25 and E. Mr. Esmurdoc sought the consultation of Human Resources in regards to how to proceed with addressing such behavior (Exhibits CC). The fact that Mr. Esmurdoc's memorandum to Ms. Leligdon regarding her conduct and that the facility Chief of Staff's Letter of Expectations regarding her conduct (Exhibit E) are not disciplinary actions suggest that facility leadership is attempting to offer Ms. Leligdon the opportunity to correct these behaviors without damaging her official record. Furthermore, the Letter of Expectations memorandum states, "This letter of expectations is being provided to you out of concern for your welfare," and the Chief of Staff also offers the following, "I am not unsympathetic to your concerns, but I must be clear in my expectations of you, moving forward. If you have any questions or wish to discuss this letter of expectations, I am available to meet with you upon request." This type of language suggests an open communication channel between Ms. Leligdon and the most senior ranking individual in her chain of command.

**Allegation #3:** This Administrative Investigation Board was called to investigate allegations that Cleveland VAMC EEO Manager, Andrea Freeman, was hostile and inappropriate in denying Ms. Leligdon's official time off to prepare for EEO meetings.

**Conclusions:** The Board determines that there is insufficient evidence that EEO Manager, Andrea Freeman, was hostile and inappropriate in denying Ms. Leligdon's official time off to prepare for EEO meetings.

Over the course of this investigation, there were a number of issues that the Board examined in regards to Andrea Freeman and her relationship with Paula Leligdon. These issues included the following:

1. **Whether Ms. Freeman created a hostile work environment when she denied Ms. Leligdon's request for official time (OT) to prepare for an Equal Employment Opportunity (EEO) claim (Exhibit B:21).** As the EEO manager Ms. Freeman provides guidance and advice to supervisors and managers on the guidelines of approving OT to employees for EEO claims. Mr. Esmurdoc consulted Ms. Freeman on approving OT for Ms. Leglidon. This Board determined that Ms. Freeman provided guidance, which was consistent to guidance provided to other supervisors and managers. Ms. Freeman provided guidance, which was consistent with the Medical Center Policy 003-008 and Code of Federal Regulations (CFR) 1614, which states, "If the complainant is an employee of the agency, he or she shall have a reasonable amount of official time, if otherwise on duty, to prepare the complaint and to respond to agency and Equal Employment Opportunity Commission (EEOC) requests for information". Reasonable time has been defined and practiced by this medical center as up to eight (8) hours per

16

claim. (O:5) Veterans Integrated Service Network (VISN) 10 EEO Manager, Ms. Darlene Mathes, corroborates with Ms. Freeman as Ms. Mathes mentioned that the normal practice is to grant approximately eight (8) hours of official time per claim with sixteen hours as the limit. (DDD:5) Ms. Mathes also reported that the number of hours of official time that Ms. Leglidon had already received was "an extreme amount for us and according to the policy." (Exhibit DDD:5) Although, Mr. Esmurdoc approved additional OT for Ms. Leglidon, this Administrative Investigations Board found that Ms. Freeman was within her rights and provided appropriate guidance when making the recommendation to deny Ms. Leglidon's request for additional OT. (O:6) Furthermore, this Administrative Investigations Board did not find that Ms. Freeman was taking sides in this matter, but was providing guidance consistent to past practice and facility policy.

2. **Whether Ms. Freeman created a hostile work environment when she denied Ms. Leligdon OT request for the EEO fact finding investigation.** Ms. Leligdon requested six (6) hours of OT on August 13, 2013 in order to prepare responses to reports of contacts written by four (4) employees who were alleging Ms. Leligdon was creating a hostile work environment. (Exhibit P) Ms. Freeman advised Mr. Esmurdoc to deny the request because it was not part of an EEO investigation. Ms. Freeman further explained that they were not looking for responses to the reports of contact but just wanted to ask Ms. Leligdon questions. Both Ms. Freeman and Ms. Mathes mentioned that OT is generally not appropriate for someone to prepare for a fact finding. (O:17) (DDD:9) This Administrative Investigations Board found that Ms. Freeman's rationale was clear and appropriate, given the nature of Ms. Leligdon's request.

3. **Whether Ms. Freeman was blatantly rude to Ms. Leglidon in an email exchange between Ms. Leglidon and Ms. Freeman. (Exhibit Q)** Specifically, in an email exchange dated August 13, 2013, where a message sent from Ms. Leligdon states, "I was told that I was being denied OT because it was not an investigation, which I have clearly shown it is. No two circumstances should be compared. I am requesting OT because it is an investigation and I have the right to prepare. If this is denied it will be noted." Ms. Freeman responded, "Paula, this is covered under my office. I am the EEO Manager and I just made a decision on this. You can call it whatever you want; but I have just told you it is not an EEO Investigation and official time does not apply. It is noted for the file that you requested and you were denied. I will not answer any more emails about this; Bruce will meet with you and your attorney next week. Have a great day!" This Administrative Investigations Board has determined that Ms. Freeman response in this matter was direct and straight to the point, and not blatantly rude or hostile toward Ms. Leligdon. A hostile work environment results when repeated episodes of harassment are based on race, color, religion, sex, national origin, age disability, reprisal, or genetic information, and they are ongoing and pervasive such that a reasonable person would conclude this. This Board found no evidence that Ms. Freeman created a hostile work environment when

17

she responded to Ms. Leligdon in the email exchange on August 13, 2013; however, the tone of the emails from both parties appeared tense.

4. **Whether Ms. Freeman engaged in and/or perpetuated rumors or gossip about Paula Leligdon:** Ms. Freeman denied knowledge of any rumors until Ms. Leligdon added that to her EEO complaint. (exhibit O:16).

**Allegation #4:** This Administrative Investigation Board was called to investigate allegations that Cleveland VAMC Medical Center failed to stop this alleged hostile behavior.

Conclusions: The Board determined that there is insufficient evidence that Medical Center failed to stop this alleged behavior.

Over the course of this investigation, there were a number of issues that the Board examined in regards to the allegations made by Paula Leligdon. These issues included the following:

1. **Whether the Medical Center leadership was aware Ms. Leglidon was being attacked by management and made no effort to intervene. (exhibit B:27)** Ms. Leligdon sent and copied leadership to numerous email messages regarding various topics related to Ms. Leligdon's allegations. (A:83, M, O:11&15, DD, EE, HH). As a result, the Medical Center Director decided to appoint this Administrative Investigation Board to look into Ms. Leligdon's allegations of a hostile work environment. (exhibit FFF) Furthermore, Ms. Leligdon did not specifically request a meeting with the Medical Center Director. (B:29) Therefore, this Board found no evidence that the Medical Center failed to respond to Ms. Leligdon's allegations and concurs that it was appropriate to appoint an AIB to investigate the alleged claims.

2. **Whether Ms. Fuehrer ignored Ms. Leligdon's email regarding the complaint of Andrea Freeman being rude in an email message.** This Administrative Investigations Board found, based on her personal testimony, that Ms. Fuehrer spoke with Ms. Freeman about the email and handled it the manner in which she felt appropriate. Ms. Fuehrer did not disclose the outcome to Ms. Leligdon because Ms. Fuehrer thought that she was not entitled to this information.

18

7.  **RECOMMENDATIONS:**  It is recommended that:

- In the spirit of Relationship Based Care, which includes a commitment to co-workers that involves accepting responsibility for establishing/maintaining healthy interpersonal relationships, discussing interpersonal problems and maintaining a relationship of functional trust, this Board recommends that the Cleveland VA Medical Center senior leadership considers strategies to improve the flow of communication between Ms. Leligdon and the three employees named in the AIB charge letter, giving special consideration to the type of communication utilized while maintaining adherence to the chain of command.

- This Administrative Investigations Board could not substantiate Ms. Leligdon's claim that rumors/gossip were going around the Medical Center about her; however, the spreading of rumors and gossip should be consistently discouraged by leadership.

Rolanda Watkins, Chief HRMS, Chair

Tamara Grimm, LISW-S, Network Lead Women Veterans Program Manager, AIB Member

19